874 So.2d 14 (2004)
Derrick PETERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-2355.
District Court of Appeal of Florida, Fourth District.
April 14, 2004.
Rehearing Denied June 8, 2004.
*15 Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Linda Harrison, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Derrick Peterson appeals his conviction and sentence for attempted second degree murder with a firearm. We find no abuse of discretion in the trial court's overruling appellant's objection that the state commented on facts not in evidence during its closing argument. However, we do find reversible error in the trial court's admission of a witness's prior consistent statement to a police officer that appellant was the gunman in a drive-by shooting incident.
The trial testimony in this case reflects the following. On the evening of March 2, 2001, Antwan Smith visited the local Elks Club in Fort Pierce. He returned home between 3:00 a.m. and 4:00 a.m. the next morning. Smith lived with his grandmother and other relatives. When Smith arrived home, he called and ordered food from the Rice Hut Restaurant on 25th and Avenue D. He then went outside and sat in his car, listening to music. While sitting in his car, he noticed a car rolling slowly by his home two to three times. In one instance, the car's headlights were turned *16 off. Giving little thought to what he had seen, he drove to the Rice Hut Restaurant five minutes later to pick up his food order.
As Smith was coming out of the restaurant, he noticed the same car passing by again. Smith got into his car and headed home, taking a different route. A few blocks down Avenue D, Smith saw the car again. Two men jumped in the car and started following him. At one point, the car's high beam lights flashed at him. Smith hesitated and slowed down, but decided not to stop. When he arrived home, the car was still following him.
When Smith pulled into his driveway and got out of his car, he saw appellant on the passenger side of the other car, hanging out of the window and holding a gun. Smith dashed in front of his car and crouched down to avoid being shot. According to Smith, appellant fired five shots at him and his car. Once the gunfire ceased, Smith went inside his house. His grandmother had already telephoned the police.
Fort Pierce Police Officer Matthew Dewey was dispatched to Smith's residence to investigate the shooting. Officer Dewey testified that Smith told him that the person who shot at him was nicknamed "Bobo."[1] On cross-examination, he conceded that he made no mention of Smith's identification of "Bobo" in his police report and reported, instead, that Smith said he did not know who shot at him.
Although the officer took some photographs of the scene and Smith's car, and collected gunshot shell casings from around Smith's home, the investigation did not lead to any physical evidence linking appellant to the gun, the ammunition shells and projectiles, or the vehicle used in the shooting.
Fort Pierce Police Detective Jeff Hamrick was assigned to investigate the shooting incident on March 3, 2001. He met with Smith on March 9, 2001 to show him a photo lineup. Smith identified appellant from the photo display. Although Detective Hamrick first met with Smith on March 9th, the two had conversed earlier by phone. During the direct examination of Detective Hamrick, the state asked the detective whether, during their phone conversation, Smith had revealed the nickname of the person who shot at him. The defense objected on hearsay grounds. After the court overruled the objection, Detective Hamrick testified that Smith told him that the shooter was "Bobo."
On cross-examination, Detective Hamrick conceded that he had been advised earlier that Smith was unable to describe or identify his assailants. During the photo lineup, Detective Hamrick questioned Smith about his reasons for telling Officer Dewey that he did not know who shot at him. According to Detective Hamrick, Smith did not deny that he failed to tell Officer Dewey who shot at him or to provide a description of anyone at the scene.
On appeal, appellant argues that the trial court erred in allowing the state to introduce Smith's prior statement to Detective Hamrick to support Smith's trial testimony that appellant was the person who shot at him.
Prior consistent statements are generally inadmissible to corroborate or bolster a witness's trial testimony, because such statements are usually hearsay. Taylor v. State, 855 So.2d 1, 22-23 (Fla. 2003); Chandler v. State, 702 So.2d 186, 187 (Fla.1997). However, prior consistent statements are admissible as non-hearsay if: (1) the individual who made the prior *17 consistent statement testifies at trial and is subject to cross-examination concerning the statement; and (2) the statement is offered in an effort to rebut an express or implied accusation of improper influence, motive or recent fabrication. See Chandler, 702 So.2d at 197-98; see also § 90.801(2)(b), Fla. Stat. (2001). Both conditions must be met for admission of a prior consistent statement as nonhearsay. Harris v. State, 843 So.2d 856, 862 (Fla. 2003).
The first condition was met in this case because Antwan Smith testified at trial and was subject to cross-examination regarding his prior consistent statement to Detective Hamrick. However, the second condition was not met, because appellant, through cross-examination, did not expressly or impliedly charge that Smith's testimony was the product of improper influence, motive or recent fabrication.
Appellant's theory of defense was two-fold: (1) that Smith never actually knew who shot at him, and (2) that he purposefully misidentified appellant as the shooter to get rid of him and allow Smith to move in on appellant's girlfriend, "Luscious." Appellant attempted to establish the first part of his defense theory by impeaching the credibility of Smith's testimony identifying the shooter. He challenged Smith's ability to observe the shooter and his failure to tell the first officer on the scene who had shot him.
To establish the second part of his defense theory, appellant cross-examined Smith about his motive in identifying appellant as the shooter to Detective Hamrick several days after the incident. Smith testified that, at the time of the shooting incident, appellant and Luscious were involved in a romantic relationship. Smith denied that he was trying to date Luscious, but acknowledged that she was trying to "talk" to him. Defense counsel's cross-examination of Smith suggested that this romantic triangle was Smith's motive for identifying appellant as the shooter. Appellant contends that he did not impeach Smith's testimony based on a charge of recent fabrication, but on a claim of consistent fabrication from the start. He points out that Smith's motive to falsely identify him as the shooter to Detective Hamrick existed when Smith made the prior statement to the officer. Thus, he argues, Smith's prior consistent statement to Detective Hamrick was not offered to rebut a charge of recent fabrication. See Lazarowicz v. State, 561 So.2d 392 (Fla. 3d DCA 1990)(holding that where prior consistent statements are made after the existence of motivation to fabricate testimony, such hearsay statements are not admissible because they are not being offered to rebut an allegation of recent fabrication in order to rehabilitate a witness).
We agree with appellant that the trial court erred in admitting Detective Hamrick's testimony that the victim identified appellant as the shooter, because the victim's statement did not qualify as a prior consistent statement to rebut a charge of recent fabrication. This testimony, which served to bolster the credibility of the sole occurrence witness, was particularly prejudicial because it was introduced through a law enforcement witness. As we reiterated in Kendrick v. State, 632 So.2d 279 (Fla. 4th DCA 1994), quoting from Barnes v. State, 576 So.2d 439 (Fla. 4th DCA 1991):
A witness's prior consistent statement may not be used to bolster his trial testimony. The rationale prohibiting the use of prior consistent statements is to prevent "putting a cloak of credibility" on the witness's testimony. When a police officer, who is generally regarded by the jury as disinterested and objective and therefore highly credible is the *18 corroborating witness, the danger of improperly influencing the jury becomes particularly grave.
In this case, where the victim's credibility was at the heart of the trial and there was no physical, corroborative evidence against appellant, we cannot say that the error was harmless beyond a reasonable doubt. See Hitchcock v. State, 636 So.2d 572 (Fla. 4th DCA 1994)(holding that the trial court committed reversible error in admitting hearsay testimony of expert witness bolstering the victim's credibility, where determination of the victim's credibility was at the heart of the trial, given the defendant's contention that the victim fabricated the allegations against him, and where there was no physical evidence supporting the victim's testimony and no incriminating statements made by the defendant).
We, therefore, reverse and remand for a new trial.
REVERSE AND REMANDED.
STONE and KLEIN, JJ., concur.
NOTES
[1] "Bobo" is appellant's nickname.