884 So.2d 168 (2004)
Little Tommy TUCKER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-4370.
District Court of Appeal of Florida, Second District.
July 23, 2004.
*169 James Marion Moorman, Public Defender, and Steven L. Bolotin, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Katherine V. Blanco, Senior Assistant Attorney General, and Deborah *170 Fraim Hogge, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Chief Judge.
Little Tommy Tucker[1] appeals judgments for carrying a concealed firearm, aggravated assault with a firearm, and felon in possession of a firearm.[2] Because the trial court refused Mr. Tucker's request to sever the charge of felon in possession of a firearm from the other charges and because the court admitted into evidence a taped 911 call without properly evaluating whether it qualified as an excited utterance, we reverse the judgments and remand for a new trial.
Mr. Tucker and Jason Pinion had an argument on April 21, 2003. The subject of this argument was not well developed at trial, but the record suggests it may have concerned the whereabouts of the inventory of their joint venture in questionable pharmaceuticals. The day after this dispute, Mr. Tucker allegedly confronted Mr. Pinion in Frostproof, Florida, at approximately 5 p.m. Mr. Pinion was standing near a telephone pole on the street where he lived. Mr. Tucker was standing nearby. Mr. Pinion, a convicted felon, claimed that Mr. Tucker pulled a handgun out of his front pocket and fired a bullet that hit the ground beside Mr. Pinion's feet. Thereafter, Mr. Tucker allegedly ran from the scene, entered a car, and rode away toward Lake Wales.
The only other witness to this event was a woman who lived in Mr. Pinion's house. She is the girlfriend of his brother, with whom she has a child. She is also a convicted felon. She claimed that Mr. Tucker had a black .38 handgun, but she did not know if it was a revolver or an automatic. She explained that Mr. Tucker first pointed the gun at Mr. Pinion and then pointed it at the ground and fired. She claimed there was a big hole in the ground where the bullet entered. After Mr. Tucker fled the scene, she and Mr. Pinion entered their car and drove to Mr. Pinion's mother's house.
At 5:19 p.m., Mr. Pinion called the 911 operator from his mother's house to report this event. The telephone call was recorded. As a result of this call, deputies were dispatched to the scene and they conducted a manhunt to locate Mr. Tucker. He was found as a passenger in a car with two other occupants. The arresting officers did not find a gun on Mr. Tucker and did not search the car. No gun was ever located. There was no gunshot residue or any other forensic evidence to support the allegation that Mr. Tucker had recently discharged a firearm. At the crime scene, the investigating deputy could not see a bullet hole in the ground, even though the woman who allegedly witnessed the event pointed to the location where she believed the bullet had entered the ground. No bullet or casing was located at the scene.
Mr. Tucker was initially charged on May 13, 2002, with carrying a concealed firearm and aggravated assault with a firearm. Mr. Tucker demanded a speedy trial, and the case was set for trial for the week of *171 Monday, July 22, 2002. The State prepared an amended information on Wednesday, July 17, which was filed on Friday, July 19, adding a count for possession of a firearm by a convicted felon.
Jury selection began on Monday, July 22, 2002. At that point, the defense did not move to sever the charge of possession of a firearm by a convicted felon from the earlier charges. It is clear from the record that defense counsel made this decision as a tactical matter. The State had not listed a fingerprint expert as a witness for trial, and the defense hoped to prevent the State from introducing the prior convictions into evidence or from otherwise proving its case in light of this omission. See, e.g., Mason v. State, 853 So.2d 544 (Fla. 1st DCA 2003) (requiring judgment of acquittal for possession of firearm by convicted felon when only evidence showing defendant was convicted felon was certified copy of judgment containing defendant's name).
On Thursday, July 25, after the jury was selected but before the panel was sworn, the trial court asked the attorneys how they intended to handle the proof regarding Mr. Tucker's status as a convicted felon. Defense counsel indicated that Mr. Tucker would not stipulate or admit that he was a convicted felon. The State responded that it would introduce into evidence a judgment reflecting Mr. Tucker's prior conviction and would arrange for a fingerprint examiner to testify to identify the fingerprints on a prior conviction as Mr. Tucker's. The defense attorney objected on the ground that the State had never disclosed a fingerprint comparison expert as a witness in discovery. The trial judge held an immediate Richardson[3] hearing, after which he offered to continue the case but indicated he was unwilling to deny the State the right to call a fingerprint expert to identify the prints on the prior conviction.
Following this ruling, defense counsel stated that, "given the predicament," she and her client had decided to ask for a severance of the charge of felon in possession of a firearm and requested that they proceed to trial on the remaining charges for which Mr. Tucker had demanded a speedy trial. The State objected to this severance, and the trial court denied the motion.
During the trial, the State sought to introduce the recorded 911 telephone call through the testimony of the 911 operator. Mr. Tucker objected that the statements made by Mr. Pinion in the recorded call were hearsay. The State responded that the telephone call was an excited utterance. The trial court initially intended to admit the recorded call without listening to it, based upon the fact that the incident alleged was an aggravated assault that could produce excitement and that the call was made approximately twenty minutes after the incident. When the defense objected and suggested that the trial court take evidence on the issue of whether Mr. Pinion was actually excited when he made the call, the trial court refused to require evidence of Mr. Pinion's state of mind at the time of the telephone call, but agreed to listen to the recording. Thereafter, the court announced:
Okay, I've listened to the tape and it sounds to me like he's excited. I don't know that that's a requirement for me to make a determination or not, given the time frame that's involved. And the fact that somebody would not be excited, I don't think would necessarily disqualify this as an excited utterance, given the situation. Because someone may be excited and you can't even tell.
*172 The trial court accepted the recording into evidence, and the tape was played for the jury. In the recording, Mr. Pinion relates to the operator not only that Mr. Tucker fired a gun at him, but also his opinion as to why Mr. Tucker may have done this and other extraneous information.
The jury ultimately convicted Mr. Tucker as charged, and he was sentenced to concurrent sentences, the longest of which is a thirty-year term of imprisonment as a habitual offender. On appeal, Mr. Tucker raises four issues. We address the two dispositive issues.[4]

I. SEVERANCE OF THE OFFENSE OF FELON IN POSSESSION OF A FIREARM
Mr. Tucker argues that the trial court erred when it refused to sever the offense of felon in possession of a firearm from the trial of his other offenses. We agree. Although a trial court has discretion to grant or deny a motion for severance, that discretion has been sharply curtailed when it concerns a request to sever a charge of felon in possession of a firearm. See Monson v. State, 627 So.2d 1301, 1302 (Fla. 1st DCA 1993); Craft v. State, 441 So.2d 704 (Fla. 2d DCA 1983).
Even if consolidation is the "most practical and efficient method of processing" a case, practicality and efficiency should not outweigh a defendant's right to a fair trial. "The objective of fairly determining a defendant's innocence or guilt should have priority over other relevant considerations such as expense, efficiency, and convenience." Crum v. State, 398 So.2d 810, 811 (Fla.1981).
State v. Vazquez, 419 So.2d 1088, 1091 (Fla.1982) (footnote citation omitted).
In this case, both the State and the defense made some last-minute tactical decisions before the commencement of the trial. Mr. Tucker did not waive his right to request a severance in that process. He moved to sever the offenses within a week of the filing of the relevant charge and prior to the swearing of the jury. Even if this case were treated as one in which the trial had commenced, Florida Rule of Criminal Procedure 3.152(a)(2)(B) states that the trial court shall grant a severance of the charges during trial if the defendant consents and shows that the severance is necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. Mr. Tucker satisfied that burden in this case.
Because the trial court abused its discretion by denying Mr. Tucker's request to sever the felon in possession of a firearm charge from the charges for carrying a concealed firearm and aggravated assault with a firearm, we reverse Mr. Tucker's convictions on the latter two charges. See Vazquez, 419 So.2d at 1091 (holding that proof of prior conviction, although unfairly prejudicial to other counts, was relevant, admissible, and not unfairly prejudicial for charge of felon in possession of firearm and thus that charge must be affirmed).[5] *173 On remand, the trial court must sever the offense for felon in possession of a firearm from the remaining offenses.

II. ADMITTING 911 TAPE AS EXCITED UTTERANCE
Mr. Tucker also argues that the trial court erred when it admitted the 911 recording as an excited utterance.[6] We agree. Section 90.803(2), Florida Statutes (2002), permits a party to introduce into evidence an out-of-court statement admitted for the truth of that statement when it is an excited utterance "relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." In order to establish the admissibility of an excited utterance, a party must first prove by the preponderance of the evidence that (1) there was an event startling enough to cause nervous excitement, (2) the statement must have been made before there was time to contrive or misrepresent, and (3) the statement must be made while the person is under the stress of excitement caused by the event. See State v. Jano, 524 So.2d 660, 661 (Fla.1988). The fact that a call is placed on a 911 line does not, standing alone, qualify it for admission under section 90.803. State v. Skolar, 692 So.2d 309, 311 (Fla. 5th DCA 1997).
Because of these three factual preconditions to the admission of an excited utterance, the procedures for preliminary questions outlined in section 90.105(1), Florida Statutes (2002), apply when a party seeks to introduce an excited utterance into evidence over the objection of the opposing party. See Perry v. State, 675 So.2d 976, 979 (Fla. 4th DCA 1996) (citing Jano, 524 So.2d 660); see also Charles W. Ehrhardt, Florida Evidence § 105.1 at 38-41 (2004 ed.). Thus, when faced with an objection to an excited utterance, a trial court should conduct a hearing outside the presence of the jury to consider the necessary evidence and make the findings of fact essential to determine whether the statement constitutes an admissible excited utterance. This is not a situation of conditional relevance governed by section 90.105(2), Florida Statutes (2002), in which the evidence can be admitted based on prima facie proof of the condition. To admit an excited utterance, the trial court must conclude that the preponderance of the evidence supports the factual circumstances permitting the introduction of the statement as an excited utterance. Cf. McDole v. State, 283 So.2d 553, 554 (Fla.1973) (holding trial court considering admissibility of confession must first determine whether preponderance of evidence establishes that confession was voluntary); Am. Tobacco Co. v. State, 697 So.2d 1249 (Fla. 4th DCA 1997) (holding trial court must weigh evidence based upon preponderance of evidence standard to determine whether crime-fraud exception applies to *174 communications otherwise protected by attorney-client privilege); see also Bourjaily v. United States, 483 U.S. 171, 175-76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (holding Federal Rule of Evidence 104(a), upon which section 90.105(1) is modeled, requires trial judge considering admissibility of statement of coconspirator to first determine whether proponent of evidence has proved by preponderance of evidence that statement was made by coconspirator during course of and in furtherance of conspiracy).
From the trial court's ruling quoted earlier in this opinion, it is apparent that the trial court did not follow the procedures necessary to admit the 911 recording. The court did not consider the necessary evidence nor make the necessary findings. The trial court seemed to believe that any statement made within fifteen or twenty minutes of an alleged assault with a firearm was automatically admissible. In deciding whether a statement is an admissible excited utterance, however, the case law does not draw bright lines based on the time between the event and the statement. See Rogers v. State, 660 So.2d 237, 240 (Fla.1995). Instead, the process emphasizes a decision by the trial court that, under all the circumstances, it is more probable than not that there was a startling event, that the statement was made before there was time to contrive or misrepresent, and that the statement was made while the person was under the stress of excitement caused by the event.
In this case, of course, whether the assault with a firearm occurred or whether Mr. Pinion simply lied about the event to spite his former business partner is the critical issue both for a determination of guilt by the jury and for the trial court's decision to admit this statement. Unless the trial court concludes that the preponderance of the evidence supports Mr. Pinion's version of these events, there is nothing exciting that occurred prior to the utterance and the State has failed to prove the first factual element necessary to admit this recording. Cf. Bourjaily, 483 U.S. 171, 175-76, 107 S.Ct. 2775 (involving evidence in conspiracy case in which admissibility of evidence relies upon finding of conspiracy). Even if the trial court determines that the events occurred, to establish the second factual element it must decide that the time and the activities between the events and the telephone call were insufficient in light of Mr. Pinion's emotional state to allow him to reflect on the situation and choose to make a conscious misrepresentation. See Rogers, 660 So.2d at 240; Hutchinson v. State, 882 So.2d 943 (Fla. 2004). Finally, the trial court needed to find that the statements made on the 911 recording were actually made during the time of stress created by the earlier events. The trial court erred as a matter of law when it refused to hear evidence on these preliminary questions and failed to make the critical factual findings necessary to determine whether the evidence was admissible. Because this case was a swearing match between convicted felons and the tape may have buttressed Mr. Pinion's testimony, we are unable to conclude beyond a reasonable doubt that the improper admission of this evidence did not contribute to the verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
Mr. Tucker argues that because the trial court's assessment of whether Mr. Pinion was in an excited state at the time of the 911 call was based solely upon the audio recording of Mr. Pinion's voice during that call, that assessment should be reviewed by this court de novo. This court could then hold, as a matter of law, that Mr. Pinion was not under the stress of any excitement and therefore the statements *175 he made on the tape are inadmissible. We decline to so hold.
A trial court's decision to admit evidence when the predicate facts and the rules of evidence create a basis for its admission is generally a matter of discretion. See Hinojosa v. State, 857 So.2d 308, 309 (Fla. 2d DCA 2003). There is support for the proposition that we can review more critically the contents of an audio or videotape because the trial court had "no special vantage point." See Almeida v. State, 737 So.2d 520, 524 n. 9 (Fla.1999); Dooley v. State, 743 So.2d 65, 68 (Fla. 4th DCA 1999). We have listened to the 911 recording on numerous occasions and candidly have a difficult time hearing the excitement in Mr. Pinion's voice that the trial court heard. Here, however, we do not have an equal vantage point with the trial court because Mr. Pinion testified at trial but has never personally appeared before our court. We agree with the trial court that "excitement" for purposes of an utterance is not a matter that is determined exclusively by tone of voice. Some people remain calm of voice when under stress; others can be excited of voice when fully capable of misrepresentation. See Hutchinson, 882 So.2d 943. In personally observing Mr. Pinion's testimony at trial prior to the admission of the 911 tape into evidence, the trial court may have been in a better position to assess whether Mr. Pinion's recorded statements were made under the stress of excitement. See State v. Mallory, 670 So.2d 103 (Fla. 1st DCA 1996). Accordingly, although we reverse the trial court's decision to admit that evidence without making the required factual findings, we do not foreclose the possibility that on remand the State may be able to present a preponderance of evidence to support the admissibility of some or all of the statements made during the 911 call as an excited utterance.
Reversed and remanded.
STRINGER, J., and ALLEN, MICHAEL E., Associate Judge, concur.
NOTES
[1] As improbable as it seems, this is Mr. Tucker's legal name.
[2] This case was argued before the Second District Court of Appeal on February 20, 2004, as the first case to be argued in the William Reese Smith Courtroom at the Tampa Campus of the Stetson University College of Law. This courtroom is a shared facility, used both as a law school classroom and a public courtroom. Judge Mike Allen of the First District Court of Appeal, a Stetson graduate, was specially appointed by Chief Justice Anstead to serve on this panel in recognition of his role in establishing the public/private partnership between Stetson and the Second District that allowed for the construction of this unique courtroom.
[3] See Richardson v. State, 246 So.2d 771 (Fla.1971).
[4] One issue raised by Mr. Tucker in this appeal was the trial court's ruling preventing his attorney from mentioning in closing arguments the State's failure to produce the results of a gunshot residue test performed on Mr. Tucker after his arrest. Although this issue is not dispositive to this appeal, we note that generally defense counsel should be permitted to assert in closing arguments that a reasonable doubt may be based upon a lack of specific evidence. See Starr v. State, 518 So.2d 1389, 1391-92 (Fla. 4th DCA 1988).
[5] Cases like Vazquez usually assume that a prior felony conviction that is admissible on a charge of felon in possession of a firearm will be inadmissible and harmful only in reference to the other counts. This may be true in cases in which the involvement of a firearm in the criminal episode is beyond dispute. Here the existence of the firearm was hotly disputed. If the aggravated assault charge was severed from the charge of felon in possession of a firearm, the testimony of the witnesses would have been more restricted at the trial for felon in possession of a firearm. Thus, it is difficult to conclude that the joinder of the charges was harmless even as to the charge of felon in possession of a firearm. Nevertheless, because the trial court erred in admitting the 911 recording, Mr. Tucker is entitled to a new trial on all counts.
[6] On appeal the State has suggested that the statement could have been admitted as a prior consistent statement under section 90.801(2)(b), Florida Statutes (2002) (stating prior consistent statement is not hearsay if declarant testifies at trial and is subject to cross-examination and statement is offered to rebut charge of improper influence, motive, or recent fabrication). That argument was not made in the trial court, and this theory of admissibility was not developed in the record. Accordingly, we do not address it.