951 So.2d 939 (2007)
Terrell Angelo CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-2167.
District Court of Appeal of Florida, Fourth District.
March 7, 2007.
Rehearing Denied April 16, 2007.
*940 Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Terrell Angelo Carter was tried by jury and convicted of carjacking, aggravated assault, and fleeing or attempting to elude with reckless driving. He appeals his judgment of conviction, arguing that the trial court erred in overruling his hearsay and lack of foundation objections to admission of a police report that contained the victim's affidavit, which recounted the incident. We reverse for a new trial.
Sean Burke moved to Florida in October 2003 from Long Island, New York with his parents. On February 7, 2004, about four months after he moved here, Burke was driving around downtown West Palm Beach to become familiar with the area. He was driving his mother's 2003 Saturn. Around 6 p.m., he stopped at a gas station on the corner of Palm Beach Lakes Boulevard and Dixie Highway to phone a friend in New York from a pay phone.
Burke testified that appellant approached him, complaining of stomach pain, and asked Burke if he would give him a ride around the block to his house. He said he lived near a mall. Believing that appellant was in pain, Burke agreed, even though he had never picked up a stranger before.
Appellant got into Burke's front passenger seat and gave directions as they rode. They headed west on Palm Beach Lakes Boulevard toward I-95. Appellant told Burke to make a right-hand turn about a mile up the road. After Burke made the right turn, appellant directed him to make another right turn. They ended up in a deserted park area. At that point, Burke started to get suspicious. He detected a change in appellant's voice and became scared. Appellant suddenly reached over with his left hand and threw the car into park. He then pulled out what appeared to be an ice pick. As soon as appellant threw the car in park, Burke removed his seat belt and bolted from the car. By the time he saw the tip of the ice pick, he was already out of the car.
Burke testified that he went to the nearest corner to flag somebody down for help. *941 An off-duty police officer came along and called the West Palm Beach police for him. Officer Darren Jenne responded to the call. Burke told the officer what happened. Two days later, Burke positively identified appellant from a photo lineup and gave the officer a sworn taped statement concerning the carjacking.
During the defense cross-examination of Burke, Burke denied that he went with appellant to buy cocaine. He acknowledged that his parents were very strict about drug use and that they would be upset if they found out that he had anything to do with drugs.
Officer Jenne testified that he responded to the call regarding a carjacking. Based on the information reported by Burke, the officer prepared a police report titled "West Palm Beach Department Stolen Vehicle/Vessel Affidavit." The officer filled out the top portion of the form, furnishing the date, time, and location of the car theft, a description of the stolen vehicle, and general information about the victim. In a space provided near the bottom of the form, Burke indicated by check mark his intention to prosecute the offender, and wrote, in narrative form, the following account of events surrounding the theft:
I was at the Amoco gas station on Palm Beach Lakes when a black male came up to me and asked me for a ride. We then drove west on Palm Beach Lakes when he said turn right here. After making the right he threw my car into park and pulled out an ice pick. I jumped out of my mother's car and ran to the nearest corner. Then a deputy called 911. I want him arrested.
Two days later, while on road patrol, Officer Jenne spotted appellant driving the vehicle described by Burke. The officer arrested appellant after pursuing him by car and on foot.
During the direct examination of Office Jenne, the state questioned the officer about the police report he prepared after speaking to Burke on the evening of the incident. Officer Jenne testified that he and Burke filled out the report together. He said that such reports are generated and kept in the normal course of business at the West Palm Beach Police Department. When the state moved to admit the report into evidence, appellant objected on the grounds of "relevancy, foundation and hearsay." The trial court overruled the objection without discussion and admitted the report as State's Exhibit 2.
Appellant testified to a dramatically different version of events. He said that on the evening of this incident, he was leaning on the phone booth at the gas station waiting for his friend to come pick him up so that he could go to Boynton Beach to his girlfriend's house to get some more money for crack cocaine. Appellant explained that he is addicted to crack cocaine and that the effects of crack cocaine last only two to five minutes before wearing off. He met Burke when Burke stopped to use the phone. According to appellant, he and Burke went to 13th Street to buy some crack. Burke had ten dollars and appellant had twenty-four dollars, so they bought ten dollars' worth of crack for Burke and twenty dollars' worth for appellant. They then smoked the crack. Afterwards, they went to the McDonalds on Palm Beach Lakes Boulevard. Then they went to Gaines Park and smoked more crack. Burke was trying to sell a bottle of champagne and a calling card that had four hundred minutes on it. They used the minutes to call appellant's friend to tell her not to come pick him up.
Appellant said that Burke, who is white, did not want to ride back through the black neighborhood, so Burke asked him to give him his two remaining crack cocaine *942 rocks while appellant used his car to go get more cocaine. Appellant testified that he lives in a crack-infested neighborhood and can get crack on credit or sometimes for free. Appellant went to buy more cocaine, but when he came back, Burke was nowhere to be found. Appellant testified that he left Burke in a middle-class neighborhood. He said that if he had pulled an ice pick on Burke, as he testified, Burke would have run to the nearest house, not to an intersection. Appellant admitted to having nine convictions for felonies or crimes involving dishonesty.
The jury returned a verdict finding appellant guilty of carjacking, aggravated assault, and fleeing or attempting to elude with reckless driving. He was sentenced to life imprisonment as a habitual felony offender with a minimum mandatory penalty of thirty years on the carjacking charge. He also received a ten-year sentence on the aggravated assault count as a habitual felony offender, with a minimum mandatory of five years as a prison releasee reoffender. He received a thirty year sentence on the fleeing or eluding count, as a habitual felony offender.
The sole issue on appeal concerns the admission into evidence of Officer Jenne's police report, which contained the victim's sworn statement concerning the incident. Appellant argues that the trial court abused its discretion and erred in overruling his hearsay and foundation objections to admission of the report. He contends that the state did not establish any basis or lay a predicate for admitting the document as a business record. This error, he asserts, was prejudicial because the report contained an inadmissible prior consistent statement made by Burke, which improperly bolstered his credibility.
The state argues that appellant failed to properly preserve this issue for appellate review because he did not raise the above specific grounds for objection in the trial court. At trial, appellant objected to the report's introduction at trial on grounds of "relevancy, foundation and hearsay." On appeal, appellant more specifically argues that the state failed to establish the predicate for a business records exception to the hearsay rule, section 90.803(6)(a), Florida Statutes, because it did not show that the supplier of the information contained in the report was acting within the course of the given business which generated the record, and the victim, who supplied the information, was not acting on behalf of the West Palm Beach Police Department.
To preserve "an error involving a ruling admitting evidence requires a timely objection which states the specific ground of objection if the `specific ground was not apparent from the context.'" Jackson v. State, 738 So.2d 382, 386 (Fla. 4th DCA 1999) (citing § 90.104(1)(b), Fla. Stat.). A "lack of foundation" objection is not a "specific ground of objection" sufficient to preserve for appellate review an issue regarding the admission of evidence. Id.; Couzo v. State 830 So.2d 177 (Fla. 4th DCA 2002); Alexander v. State, 778 So.2d 1017 (Fla. 4th DCA 2001); Filan v. State, 768 So.2d 1100 (Fla. 4th DCA 2000).
In Filan, the defendant was tried for felony driving under the influence (DUI). During the trial, the state moved to admit into evidence the hospital records containing the results of the defendant's blood alcohol test. The defendant objected on the grounds of relevancy and lack of foundation. On appeal, he argued that the state did not lay a proper foundation for admission of the records under section 90.803(6), because it failed to establish that the records were made "by, or from information transmitted by, a person with knowledge" of the matter recorded. We held that the defendant's general lack-of-foundation objection made at trial was insufficient to preserve his more precise point argued on appeal.
*943 The case before us is distinguishable from Filan. Here, appellant made more than a mere "lack of foundation" objection. When the state moved to admit the police report/victim affidavit into evidence, defense counsel objected on the ground of hearsay. An objection to evidence on hearsay grounds is sufficient to preserve for appellate review the failure of the proponent of the evidence to lay a proper predicate. See Richardson v. State, 875 So.2d 673, 676 (Fla. 1st DCA 2004) (citing Andrews v. State, 261 So.2d 497 (Fla.1972); Neeley v. State, 883 So.2d 861, 864 (Fla. 1st DCA 2004)); see also King v. State, 590 So.2d 1032, 1033 (Fla. 1st DCA 1991) (finding the defendant's hearsay objection sufficient where the state failed to satisfy the foundational requirements of section 90.803(6) for admission of a computer printout at sentencing).
In Richardson, a defendant charged with robbery of a convenience store objected on hearsay grounds to testimony regarding the amount of money taken from the cash register. On appeal, the defendant argued more specifically that the testimony was inadmissible under the "business records" exception to the hearsay rule because the purported custodian of records never testified that she was the actual custodian of the records on which the loss analysis was based. He further argued that the records were not identified, shown to be kept in the regular court of business, or offered into evidence. Citing Filan and Jackson, the state argued that because the defendant failed to raise these specific grounds for objection in the trial court, they were not preserved for appellate review. The first district rejected the state's argument, citing the supreme court's holding in Andrews that "an objection to a question on hearsay grounds is sufficient to preserve for appellate review the failure of the proponent of the testimony to lay a proper predicate." Id. at 676.
Here, when the state moved the police report/affidavit into evidence under the business records hearsay exception, appellant objected on relevancy, hearsay, and foundation grounds. He makes the same argument on appeal that the document should not have come in as a business record; that it was hearsay. Thus, appellant's hearsay objection was sufficient to preserve for appellate review his arguments regarding admission of the police report/affidavit.
On the merits, we agree with appellant that the trial court erred in admitting the report. The state argues that the document was properly admitted, contending that the document is not a police report, but a victim affidavit. Yet, the state does not explain why this victim affidavit falls outside the definition of hearsay or suggest some hearsay exception or exclusion that might apply. The state argues only that if the document was admitted in error, it was harmless.
The document in question, whether considered a police report or a victim affidavit, does not fit within the business or public records exception to the hearsay rule. See Burgess v. State, 831 So.2d 137, 140 (Fla. 2002) (noting that police reports or criminal arrest affidavits are not admissible into evidence in criminal proceedings as a public record exception to the hearsay rule because that exception expressly excludes them); Reichenberg v. Davis, 846 So.2d 1233, 1234 (Fla. 5th DCA 2003) (holding that reports of DCF investigators which contained witness interviews were not admissible under the business or public records exception to the hearsay rule because the statements in the reports were not based upon the personal knowledge of an agent of the business or agency); Harris v. Game & Fresh Water Fish Comm'n, 495 So.2d 806, 809 (Fla. 1st DCA 1986) (quoting CHARLES EHRHARDT, FLORIDA EVIDENCE *944 § 90.805, at 563 (2d ed. 1984): "For example, if a business record includes a statement of a bystander to an accident, the bystander's statement is hearsay and not included within the business records exception because the statement was not made by a person with knowledge who was acting within the regular course of the business activity.").
Here, the document admitted into evidence as State's Exhibit 2 contains a sworn statement of the victim recounting details of the car theft. As such, it is classic hearsay. Section 90.801(1)(c) of the Florida Evidence Code defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay includes an out-of-court statement of a witness who testifies at trial, as well as an out-of-court statement by someone who is not a witness on the stand testifying to the statement. CHARLES EHRHARDT, FLORIDA EVIDENCE § 801.2 (2003 Edition); see also Ellis v. State, 622 So.2d 991, 996-97 (Fla. 1993) (pre-trial statement to prosecutor of witness who testified during the trial "was hearsay and therefore inadmissible in the absence of any other exception to or exclusion from the hearsay rule").
Appellant further argues that the victim's affidavit is not admissible as a prior consistent statement under section 90.801(2)(b), because the state did not offer it to rebut an express or implied charge against the victim of improper influence, motive, or recent fabrication. See Taylor v. State, 855 So.2d 1, 22 (Fla.2003). "Generally, prior consistent statements are inadmissible to corroborate or bolster a witness's trial testimony." Id.
We conclude that the trial judge erred in allowing the police report/victim affidavit into evidence. Moreover, we cannot find the error harmless. The state, as the beneficiary of any error, must demonstrate beyond a reasonable doubt that the complained-of error did not contribute to the verdict. It must prove that "there is no reasonable possibility that the error contributed to the conviction." Ibar v. State, 938 So.2d 451, 463 (Fla.2006) (citing State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986)).
Appellant's defense to the carjacking count was that Burke provided him with the car and that Burke fabricated his version of events to conceal his drug involvement from his parents and to account for the missing vehicle. Because there was no physical evidence or independent eyewitness testimony to corroborate the victim's account of events, the victim's credibility was a crucial issue in the trial. The affidavit tended to bolster the credibility of the victim and provide self-corroboration. Its prejudicial effect was then compounded by the fact that it was introduced through a police officer, who is generally regarded as a disinterested, objective, and, therefore, highly credible witness. See Peterson v. State, 874 So.2d 14, 17-18 (Fla. 4th DCA 2004); Barnes v. State, 576 So.2d 439 (Fla. 4th DCA 1991).
In addition, the prosecutor referred to the victim's affidavit in closing argument, urging the jury to take it back with them, look at it, and consider whether it is consistent with the testimony.
The state urges us to find the error harmless because appellant's story is patently "unbelievable." But this is not the harmless error test we must apply:
"The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The *945 question is whether there is a reasonable possibility that the error affected the verdict."
DiGuilio, 491 So.2d at 1139.
Because there is a reasonable possibility that the error contributed to the conviction in this case, we reverse and remand for a new trial.
Reversed and Remanded.
STEVENSON, C.J., and WARNER, J., concur.