KAHN, J.
Appellant, Servando Ortuno, Jr., challenges his conviction for lewd or lascivious molestation of a person less than 16 years of age, asserting the trial court abused its discretion by admitting into evidence the alleged victim’s prior consistent statements. We reverse, because the established rationale for allowing such statements as exceptions to the hearsay rule does not apply here.

FACTUAL AND PROCEDURAL BACKGROUND

At trial, the alleged victim, K.C., testified that appellant had touched her inappropriately on two occasions in 2008, around the time of her thirteenth birthday. Describing the incidents, K.C. said that appellant got on top of her while she was sitting in a recliner, and touched her breasts under her clothes.
*1088 In February 2009, an investigator, Jamie Bishop, came to K.C.’s school and asked her about appellant’s brother, Pedro Ortuno, and K.C.’s sister, S.C., who was 14 at the time. K.C. told Bishop that Pedro Ortuno and S.C. were having a sexual relationship. K.C. was then removed from her home and placed with the family of Jeffrey Uhrick, the biological father of another of her half-siblings. Approximately one week later, K.C. participated in a videotaped Child Protection Team (CPT) interview with Lisa Lustgarden, regarding the relationship between S.C. and Pedro Ortuno. Over defense counsel’s objection, K.C. testified that she also told Lustgarden about appellant touching her. On cross-examination, K.C. stated that she did not like Pedro telling her what to do, but liked living in Uhrick’s home, where she was treated well. K.C. recalled that conditions in her mother’s house, where she had lived before, were terrible and that the family sometimes did not have food to eat.
At trial, Lustgarden testified to KC.’s disclosures made during the interview. The trial court overruled the defense’s continuing objection to the content of the disclosures, which defense counsel argued were hearsay. Lustgarden asserted K.C. wrote down that appellant, in her words, “rubbed” her and, when asked where, wrote “my boobs.” Over defense counsel’s objection, Lustgarden acknowledged that, in the prosecutor’s words, K.C. described “being in the living room in the recliner at night watching TV and [appellant] gets on top of her ... [a]nd puts his hands underneath her clothes and touches her breasts.” On cross-examination, Lustgar-den testified that K.C. said she once slapped Pedro Ortuno, that she wanted to kill appellant because he had physically abused her mother, and that living with the Uhrick family was “awesome.”
The State moved the recorded CPT interview video, a DVD, into evidence. Defense counsel maintained previous objections to the contents of the video on the basis of hearsay. The jury found appellant guilty as charged. The trial court adjudicated appellant guilty and imposed a sentence of 52 months in state prison. Or-tuno now seeks review of the trial court’s admission of statements made by K.C. before trial.

ANALYSIS

We review evidentiary rulings for abuse of discretion. See Johnson v. State, 969 So.2d 938, 949 (Fla.2007). The trial court’s discretion, however, is constrained by the evidence code and applicable case law. See id.; Johnston v. State, 863 So.2d 271, 278 (Fla.2003); Hendricks v. State, 34 So.3d 819, 822 (Fla. 1st DCA 2010); McCray v. State, 919 So.2d 647, 649 (Fla. 1st DCA 2006). Though hearsay is generally inadmissible, the evidence code makes exception for prior consistent statements:
A statement is not hearsay if the declar-ant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is ... [consistent with the declarant’s testimony and is offered to rebut an express or implied charge against the declarant of improper influence, motive, or recent fabrication[.]
§ 90.801(2)(b), Fla. Stat. (2009). The window of admissibility, however, presupposes that the statement must have been made “prior to the existence of a fact said to indicate bias, interest, corruption, or other motive to falsify.” See Preston v. State, 470 So.2d 836, 837 (Fla. 2d DCA 1985). Where prior consistent statements are made after the existence of “motivation to fabricate testimony, such hearsay statements are not admissible because they are *1089 not being offered to rebut an allegation of recent fabrication in order to rehabilitate a witness.” See Peterson v. State, 874 So.2d 14, 17 (Fla. 4th DCA 2004).
Here, the State’s case included unrebut-ted evidence that the alleged victim had a motive to falsify: having been removed from her home in February 2009 and placed under the care of Jeffrey Uhrick, K.C. testified that it was “awesome” living with the Uhrick family because they treated her like a daughter. K.C. agreed with defense counsel that she “finally” had a family that would love her. In contrast, K.C. conceded that “things were terrible” at her mother’s home. Sometimes, K.C. agreed, her mother did not have sufficient food at the house and had to “borrow” food from neighbors or the church. The foregoing testimony suggests that if, indeed, K.C. had a motive to fabricate the allegations leveled at trial against appellant — by claiming she had been molested by appellant, perhaps she could avoid a return to her mother’s home and remain in the Uh-ricks’ care — such motive existed before the CPT interview.
We hold that the admission of K.C.’s prior consistent statements, made during the CPT interview, was erroneous because the motive to falsify did not arise after that interview. K.C. had been removed from her mother’s home and was living with the Uhricks when Lustgarden conducted the CPT interview. It was Uhrick, in fact, who took K.C. to be interviewed by Lustgarden. Accordingly, K.C. had the same motivation, or bias, at the time she spoke with Lustgarden as when she testified at trial. Because the alleged victim’s prior consistent statements “were not made, as required by law, prior to the time that a motive to fabricate existed,” the trial court erred by admitting them. See LeBlanc v. State, 619 So.2d 1021, 1022 (Fla. 3d DCA 1993).
Nor do we believe the error was harmless. The State offered no corroborating evidence of, or eyewitness to, the charged criminal acts. Rather, the case turned entirely on the perceived truthfulness of K.C. and appellant. Thus framed, any testimony seen to bolster either side’s credibility would have been of significant import. The manner in which the prosecution presented the Lustgarden testimony is similarly troubling. The prosecutor exerted considerable effort to “qualify” Lust-garden as an expert interviewer, thus raising the inference that Lustgarden had the ability to extract truthful responses from sexually abused children. This approach, particularly in a case where the witness did not even offer opinion testimony, lent additional credence to Lustgarden’s account. The erroneously admitted testimony, moreover, was raised repeatedly, communicated to the jury by no fewer than three different witnesses (Bishop, Lustgar-den, and K.C. herself, through her recollection of the alleged incident as described to Lustgarden). As in Peterson, “where the victim’s credibility was at the heart of the trial and there was no physical, corroborative evidence against appellant,” the State cannot carry its burden to prove that the error was harmless beyond a reasonable doubt. See 874 So.2d at 18.
REVERSED and REMANDED for a new trial.
DAVIS and HAWKES, JJ., concur.