ROTHSTEIN-YOUAKIM, Judge, Dissenting. In his brief on appeal, Devin Roop argues that the trial court erred in admitting Frank Yeater’s 911 call because it was “completely hearsay” that did not fall within the excited utterance- “or some other hearsay exception” and that the error was not harmless beyond a reasonable doubt. Roop’s argument is not eloquent; nor is it particularly thorough. But he makes it. Moreover, in the trial court, he twice objected that the call was inadmissible hearsay intended to improperly bolster Yeater’s testimony. And once he made a proper objection, the burden shifted to the State, as the proponent of the evidence, to establish its admissibility. See, e.g., Yisrael v. State, 993 So.2d 952, 956 (Fla. 2008); Caldwell v. State, 137 So.3d 590, 591-92 (Fla. 4th DCA 2014); Self v. State, 55 So.3d 677, 679 (Fla. 5th DCA 2011). Because I disagree that the State carried that burden, I would hold that the trial court abused its discretion in admitting that portion of the call in which Yeater identified Roop as his assailant. Moreover, because I also disagree, on the facts of this particular case, that the error was harmless beyond a reasonable doubt, I would reverse and remand for a new trial. Background' Yeater has known Roop and Roop’s stepbrother for more thah a decade, and they all lived in the same neighborhood. Yeater and Roop went to school together and used to be friends. On New Year’s Eve 2013, an incident occurred between Yeater and Roop’s stepbrother in Roop’s presence. The authorities were called, but Yeater was not charged with any wrongdoing. At- around noon five days later, Yeater was driving along a quiet stretch of road in Lake Wales on his way home from a flea market when he noticed a car quickly gaining on him. The car pulled alongside Yeater’s truck. At that point, Yeater subsequently maintained, Roop leaned out of the car’s half-open, rear • passenger’s window and threw an object at Yeater’s truck. According to Yeater, Roop knew that Yeater owned that truck because he had seen Yeater driving it on previous occasions. The object struck the driver’s side door of the truck near the handle, and the car sped away. At first, Yeater continued on, but then he decided to turn around and try to retrieve what had been thrown at his truck. He returned to the area where the incident had occurred and called 911. Approximately. two minutes had passed between the incident and the call. Yeater told the 911 operator that Roop had thrown an object at his truck. Yeater then stayed on the phone with the operator and contemporaneously narrated his search for the object, which eventually led to his discovery of a metal pipe, A sheriffs deputy was dispatched to the scene and took photograph's of the damage to Yeater’s truck, The deputy also recovered the metal pipe from Yeater’s truck bed. No fingerprints could be recovered from the pipe. No physical evidence tied Roop to the offense. The State moved in limine to admit at trial a redacted versioii of the 911 call, arguing that, although hearsay, Yeater’s statement that Roop had thrown the object was admissible as a spontaneous statement and an excited utterance and Yeater’s narration of his search for, and eventual discovery of, the metal pipe also was admissible ^s a spontaneous statement. The State proffered that Yeater would testify that, a couple of minutes after the pipe had been thrown at his truck, he had pulled over to the -side of the road, had called 911, and had identified Roop as the person who had thrown the pipe. The State did not proffer further but argued that the mere fact that Yeater ’had used a calm tone of voice on the 911 recording did not mean that he had not been “still excited or stressed out” from the event.[7] Roop objected to the admission of the statement as either an excited utterance dr a spontaneous statement and argued that the State was merely attempting to bolster Yeater’s testimony. Roop proffered Yeater’s prior deposition testimony that, right after the event, Yeater had dr[iven] down the road a ways because he was just gonna forget about it,, but then thought about it a little more and thought well, then maybe I just should turn back and call the police because something further might happen and I want to put it on the record. After reviewing the State’s motion and “the affidavit in the file” (presumably the complaint affidavit) and listening to parties’ arguments and the audio recording of the entire 911 call, the trial court granted the State’s motion to play a redacted recording for the jury. As the majority observes, the court made no findings of fact and did not identify the hearsay exception on which it based its admissibility determination. At trial, Yeater testified to the facts of the offense, as. set forth above. When asked whether he had pulled over to the side of the road after the car had sped off, Yeater responded,- “At first I continued to keep on going, and then I decided to turn around and—to go grab—see whatever it was, and then go pick it up,” Yeater testified that, when he had called 911, he “[had been] scared at that point” and “[had been] frightened” because “I didn’t know what— I don’t know what [Roop’s] intentions were to do.” Over Roop’s renewed hearsay objection, the State introduced the redacted audio recording of the 911 call into evidence and played the following for the jury: 911 OPERATOR: What’s going on State Road 60? Hello? MR. YEATER: I was headed—I was heading down the road and Devin Roop was in a—-the passenger in the back of a black car and he—he took a piece of, like, metal rebar and he threw it at the side of my truck. 911 OPERATOR: Are you outside walking around? MR. YEATER: Yes. 911 OPERATOR: Okay. MR. YEATER: I’m—I’m looking'for the piece of rebar he threw at my truck. We were both heading south and he passed me up in the passing lane, and that’s, when he throwed the piece- of rebar at my truck. There’s a nice little dent and scratch in my door. I just found it. It’s a metal pipe. ' 911 OPERATOR: It’s a pipe? MR. YEATÉR: Yeah. It’s like a metal pipe. I’m not going to touch it. I’ve got a piece of paper here. That way you can get fingerprints off of it. On cross-examination, Yeater acknowledged that, despite having been frightened after Roop had thrown the object, he had initially intended to continue driving but then had decided “[s]econds later” to turn around. On redirect, Yeater clarified that he “was just going to let it go” at first but then had decided to call the police “[because after initially thinking of who it was, I knew this wasn’t going to be a—it wasn’t going to stop with Devin Roop.” After the State rested, Roop’s stepfather, Russell Brown Sr., testified that Roop had been at Brown’s residence in another town on the day of the incident. Brown testified that he remembered that day because it had been his wife’s birthday celebration. On cross-examination, Brown acknowledged that he had not told authorities that Roop had been with him that day until after defense counsel had contacted him toward the end of 2014. On redirect, however, he testified that he had not realized that the incident had occurred on the same day as the birthday celebration until after he had spoken to the defense investigator. In closing, the State argued that the evidence established that Roop had thrown the pipe at Yeater in revenge for the New Year’s Eve incident. The State argued that Yeater was credible because, among other things, Yeater had “immediately” identified Roop as the perpetrator. Before again playing the redacted 911 call for the jury, the State directed, “I want you to pay attention and listen to how [Yeater] immediately identifies Mr. Roop as the person who threw that piece of metal pipe ... at his vehicle.” After playing it, the State emphasized that “there was absolutely no hesitation in Mr. Yeater’s voice, because he knew exactly who threw this piece of metal pipe .... There was no hesitation as he knew who caused the damage to his vehicle .... ” In rebuttal closing argument, the State again emphasized the redacted 911 call in arguing that Yeater had not contrived this situation or fabricated his story: Does that sound like a person who is calling 911 in a stressful situation and reporting an incident to law enforcement exactly how it occurred, right after it occurred, and is discussing with law enforcement the actions he’s taking to search for a weapon that was hurled at his vehicle? That 911 recording corroborates exactly what the victim told you. Analysis A prior consistent statement is “generally inadmissible hearsay and cannot be used solely to corroborate or bolster a witness’s testimony.”[8] Howard v. State, 152 So.3d 825, 828 (Fla. 2d DCA 2014). There are, however, two conceptually related but distinct exceptions to this general rule: (1) if the statement is “[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition,” § 90.803(2), Fla. Stat. (2014); or (2) if it is “[a] spontaneous statement describing or explaining an event or condition made while the declar-ant was perceiving the event or condition, or immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness,” § 90.803(1). The majority holds that the trial court properly admitted Yeater’s 911 call under the “excited utterance” exception. To qualify as an excited utterance, “the statement must be made: (1). ‘regarding an event startling enough to cause nervous excitement’; (2) ‘before there was time to contrive or misrepresent’; and (3) ‘while the person was under the stress or excitement caused by the event.’ ” Hayward v. State, 24 So.3d 17, 29 (Fla. 2009) (quoting Hudson v. State, 992 So.2d 96, 107 (Fla. 2008)). The excitement of the startling event deprives the declarant of the reflective capacity essential for conscious misrepresentation and, thus, provides sufficient guarantees of reliability that justify admissibility. See id.; see also Charles W. Ehrhardt, Ehrhardt’s Florida Evidence § 803.2, at 1020-22 (2016 ed.) (“A person who is excited as a result of a startling event does not have the reflective capacity essential for .conscious misrepresentation; therefore statements that are made by the person who is in a state of excitement and has not had an opportunity to engage in reflective thought are spontaneous and have sufficient - guarantees of truthfulness.” (footnote omitted)). Consequently, “[i]f sufficient time passed for reflective thought, the proponent for admission of the statement must show that reflective thought did not occur,” Williams v. State, 967 So.2d 735, 748 (Fla. 2007), and it must do so by a preponderance of the evidence, Tucker v. State, 884 So.2d 168, 173 (Fla. 2d DCA 2004). In my view, the record establishes that Yeater not only had sufficient time for reflective thought but actually engaged in-such thought. Contrary to the majority’s assertion, that I would find error on this basis does not mean that I shoulder Roop’s burden either in the trial court or on appeal to make a proper argument; it means that .1 decline to shoulder the State’s burden in the trial court to lay a sufficient predicate upon Roop’s objection to the statement’s admission as an excited utterance or a spontaneous statement. See Yisrael, 993 So.2d at 956 (“[T]he State, as the evidentiary proponent, thus had the burden of supplying a proper predicate to admit this evidence under an exception to the rule against hearsay.”); Mariano v. State, 933 So.2d 111, 118 (Fla. 4th DCA 2006) (“[I]t is the state’s burden to show that the statement is an excited utterance.”); see also Andrews v. State, 261 So.2d 497, 498 (Fla. 1972) (“[Fjailure to lay a proper predicate converts otherwise admissible testimony into hearsay. It follows that an objection on hearsay grounds is sufficient to preserve for appellate review the issue of failure to lay a proper predicate.”); Carter v. State, 951 So.2d 939, 943 (Fla. 4th DCA 2007) (“An objection to evidence on hearsay grounds is sufficient to preserve for appellate review the failure of the proponent of the evidence to lay a proper predicate.”). As set forth above, Yeater’s prior consistent statement was presumptively inadmissible hearsay absent a determination that it fell within the excited utterance or other exception. See Howard, 152 So.3d at 828; Tucker, 884 So.2d at 173 (“Because of these three factual preconditions, to the admission of an excited utterance, the procedures for preliminary questions outlined in section 90.105(1), Florida Statutes (2002), apply when a party seeks to introduce an excited utterance into evidence over the objection of the opposing party.”). Once Roop objected to its admission as an excited utterance, the trial court could not properly have admitted .it as an excited utterance until the State proved, and the court found, by a preponderance of the evidence, “the factual circumstances permitting the introduction of the statement as an excited utter-anee.” Tucker, 884 So.2d at 173 (stating that, when faced with objection to excited utterance, trial court must find that preponderance of evidence supports factual circumstances permitting statement’s admission as excited utterance). These factual 'circumstances include that the statement was made “before there was time to contrive or misrepresent,” i.e., before there was time for reflective thought. Id. at 174. While the majority. merely “expresses some concern” that the trial court failed to explicitly find this factual circumstance, I would hold that reversal is warranted because it would have been impossible for the trial court to find this factual circumstance on this record, which the State bore the sole burden to establish. At the hearing on the motion in limine, 'the State did not contest or object to Roop’s proffer of Yeater’s prior deposition testimony that Yeater had dr[iven] down the road a ways because he was just gonna forget about it, but then thought about it a little more and thought well, then maybe I just should turn back and call the police because something further might happen and I want to put it on the record. Moreover, as noted above, before the State introduced the 911, tape at trial, Yeater had testified, “At first I continued to keep on going, and then I decided to turn around and—to go grab—see whatever it was, and then go pick it up.” (Emphasis added.) The majority insists that this testimony can be construed to mean that Yeater was “acting on impulse and not with the benefit of time sufficient to overcome his instincts and fabricate a story.” Yet nothing about Yeater’s testimony suggests that he was merely acting on impulse. Yeater “thought about it” enough to decide that he should “put it on thé record” because it supposedly involved Rbop and “something further might happen.” He “decided” to go back to look for what had been thrown at his truck. This is evidence of a conscious, deliberate process.[9] Yeater’s acknowledged ability to reflect is the exact opposite of evidence that he had not engaged in reflective thought, and, therefore, his subsequent identification could not have been admissible as an excited utterance regardless of whether ;he was otherwise still rat-' tied by- the event,[10] See Elysee v. State, 920 So.2d 1205, 1207-08 (Fla. 4th DCA 2006) (holding that victim’s statement to police was not excited utterance, despite that victim made it while visibly upset and seared fifteen to twenty minutes after event, because victim’s testimony that she “got to thinking about it” before making the statement “indicated beyond any question that she had engaged in reflective thought”); see also Hutchinson v. State, 882 So.2d 943, 951-52 (Fla, 2004) (holding excited utterance inadmissible when there was sufficient time to permit reflective thought and court could only speculate as to whether declarant engaged in reflective thought between event arid statement absent any evidence on what transpired during this period, noting that “[a] statement as to what occurred does riot become admissible merely because the victim is still in an excited state” (quoting Charlot v. State, 679 So.2d 844, 845 (Fla. 4th DCA 1996))), receded from on other grounds by Deparvine v. State, 995 So.2d 351, 369 (Fla. 2008); Mariano, 933 So.2d at 117 (“[T]he statement took the form of a narrative of the events, which in and of itself indicates that the victim is reflecting upon the events of the evening. Because the only evidence the state provided to support the admission of the statement was the victim’s upset state, this was insufficient to warrant admission of the statement as an excited utterance.”). Accordingly, as Roop argues, albeit inartfully, on appeal, Yeater’s identification of him- to .the 911 operator was “completely hearsay” that did not fall within an exception.[11] Having concluded that the admission of the identification was error, the question becomes whether the error was harmless beyond a reasonable doubt. See Geissler v. State, 90 So.3d 941, 948 (Fla. 2d DCA 2012) (observing that State bears burden of establishing harmlessness beyond reasonable doubt (citing State v. DiGuilio, 491 So.2d 1129, 1138 (Fla. 1986))). With no physical evidence linking Roop to the offense, this case boiled down to a credibility contest between Yeater, the sole eyewitness, and Brown, who testified that Roop had been nowhére near the scene. Although acknowledging that “the credibility-enhancing effect of an improperly admitted prior consistent statement can be harmful in close cases like this,” the majority reasons that the risk of harm is diminished in this case because the bad blood between Roop and Yeater predated the 911 call: [I]f Mr. Yeater’s trial testimony that Mr. Roop was his assailant was suspect because of a motive to lie, his statement to 911 was- .equally suspect for the same reason. It is very hard to see how a jury would consider the trial testimony’ of a witness with a motive to lie more credible simply because the same witness said the same thing at an earlier time when he had the same motive to lie.... Thus, the bolstering effect such a prior consistent statement on the facts of this case, if any, would have been minimal. During closing argument, however, the State replayed Yeater’s 911 call and, among other things, repeatedly emphasized Yeater’s “immediate” identification of Roop as the attacker and argued that its very immediacy rendered it more worthy of belief. In short, the State relied on the statement itself to explicitly undermine the finding concerning the statement that the majority insists the jury naturally would have made. The risk of harm, therefore, is not diminished in this case but actually heightened. Moreover, although certainly “shifting,” Brown’s alibi testimony was not so lacking in credibility as to be inherently incredible. Consequently, I cannot agree that there is no reasonable possibility that the admission of Yeater’s identification of Roop during the 911 call contributed to the verdict, see Thomas v. State, 993 So.2d 105, 108-09 (Fla. 1st DCA 2008) (reversing for new trial because there was reasonable possibility that erroneous admission of hearsay, which State emphasized at closing argument, contributed to conviction); Elysee, 920 So.2d at 1207-08 (holding that hearsay did not qualify under excited utterance exception and that “[ajllowing the officer to bolster the credibility of the victim, who was the only witness to the crime, with her prior consistent statements, was prejudicial”), and I must respectfully dissent. . The State argued: A statement that described an event or condition as it’s occurring or immediately thereafter is sufficient for that exception even if the person making the statement doesn’t appear to be in an excited state which in the tape recording the. state seeks to introduce as the 911 call progresses, you know, five minutes, six minutes, obviously the state would submit that the excited condition or the speaker is still excited or stressed out from, the condition, but he is using a calm tone, of voice. So essentially I just provided this case to go to the point that’ even though [Yeater] doesn’t sound excited or stressed out his statement should still be admissible. . Pursuant to section 90.801(2)(b), Florida Statutes (2014), such a statement may constitute admissible nonhearsay when the declar-ant testifies at trial and the statement is offered to rebut a charge of improper influence, motive, or recent fabrication of the declarant, but the prior consistent statement "must have been made ‘prior to the existence of a fact said to indicate bias, interest, corruption, or other motive to falsify.' " Ortuno v. State, 54 So.3d 1086, 1088 (Fla. 1st DCA 2011) (quoting Preston v. State, 470 So.2d 836, 837 (Fla. 2d DCA 1985)). Because Yeater made his statement to 911 identifying Roop as the perpetrator after Yeater had developed his dislike of Roop and after the incident on New Year's Eve, this section is inapplicable. See id. at 1088-89. . The cases upon which the majority relies either failed to mention what transpired between the event and statement or had evidence showing declarant did not engage in reflective thought, See Williams, 967 So.2d at 749-50 (noting that only evidence- between event and declaration was shower that declar-ant took while still suffering from stab wounds without any evidence of what transpired between event and declaration or what occurred during shower other than defendant’s conjecture); Cox v. State, 473 So.2d 778, 782 (Fla. 2d DCA 1985) (not mentioning whether reflective thought occurred); Taylor v. State, 146 So.3d 113, 116 (Fla. 5th DCA 2014) (noting absence of evidence that declar-ant had sufficient time,for reflection without mentioning whether declarant actually reflected between event and statement); Vanevery v. State, 980 So.2d 1105, 1107 (Fla. 4th DCA 2008) (rejecting argument that calm tone of caller was not excited utterance without describing whether there was sufficient time for reflective thought); Werley v. State, 814 So.2d 1159, 1161 (Fla. 1st DCA 2002) (not mentioning whether declarant actually engaged in reflective thought or what happened between startling event and statement); Edwards v. State, 763 So.2d 549, 550 (Fla. 3d DCA 2000) (same); Rivera v. State, 718 So.2d 856, 858 (Fla. 4th DCA 1998) (same). . The State elicited Yeater’s testimony that he had ultimately decided to call police ‘‘[b]e-cause after initially thinking of who it was, I knew ... it wasn't going to stop with Devin Roop” after.it had already played the 911 recording for the jury, and so this evidence was riot before the trial court when it overruled Roop’s renewed objection. Nonetheless, this evidence merely reinforces my determination that Yeater had ample opportunity for reflective thought before calling 911. . Because I am obligated to affirm on any basis that finds support in the record, see, e.g., Robertson v. State, 829 So.2d 901, 906 (Fla. 2002) (recognizing that "tipsy coachman” doctrine allows appellate court to affirm trial court that reaches right result but for wrong reason so long as there is any basis in record that would support result), I must also consider whether the statement was, alternatively, admissible as a "spontaneous statement” under section 90.803(1). I conclude that it was not: the facts precluding the statement’s admission as an excited utterance also preclude its admission as a spontaneous statement because they show both reflective thought and a lack of the requisite substantial contemporaneity between the event and Yeater’s identification of Roop as the perpetrator to the 911 operator. See Deparvine, 995 So.2d at 369-70; Hutchinson, 882 So.2d at 951-52 (holding that statement during phone call about fight was inadmissible under section 90.803(1) because declarant had placed call after leaving house where fight had occurred, interval between event and phone call was long enough to permit reflective thought, and there was no evidence that declarant had not, in fact, engaged in reflective thought).