NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

EDWARD JAMES HOWARD,       )
                           )
        Appellant,         )
                           )
v.                         )        Case No. 2D13-3008
                           )
STATE OF FLORIDA,          )
                           )
        Appellee.          )
_____    )

Opinion filed December 12, 2014.

Appeal from the Circuit Court for
Hillsborough County; Steven Scott
Stephens, Judge.

Howard L. Dimmig, II, Public Defender, and
Alisa Smith, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Johnny T. Salgado,
Assistant Attorney General, Tampa, for
Appellee.


VILLANTI, Judge.

        Edward James Howard appeals his conviction and sentence for robbery

with a firearm.  Because the State improperly bolstered its witness and made improper

arguments during closing argument that amounted to fundamental error, we must reverse his conviction and remand for a new trial.

Howard was arrested following an armed robbery that occurred in a motel parking lot in the early morning hours of December 6, 2012. Armed with a firearm, Howard's codefendant, Darrek Battle, committed the robbery and then got into a car that Howard was driving. After leading police on a high-speed chase, Howard crashed his car and both defendants were arrested. During his interview with police, Battle stated that he did not have a gun during the robbery but was instead holding a screwdriver. Battle eventually made a full confession and ultimately pleaded guilty.

Howard was charged with armed robbery, fleeing to elude, and driving with a suspended license. During Howard's trial, the State called Battle as a witness. Battle testified that he had committed the robbery at Howard's insistence, that the robbery took place at a motel, that he used a gun that he had gotten from Howard and a ski mask in committing the robbery, and that Howard acted as the getaway driver. Battle also testified on direct examination that he had lied to police officers during his initial interview about not having a gun. The State inquired:

> [STATE]: You lied to them? What do you mean you lied to them?
> [BATTLE]: I just was telling them anything.
> [STATE]: Why did you tell them anything?
> [BATTLE]: I don't know. I just –
> [STATE]: Let's be clear. Let's be clear about what you did tell them. Did you tell them that you were in the parking lot of the motel when the robbery occurred?
> [BATTLE]: Yes, sir.
> [STATE]: Did you tell them that you were in the car that crashed?
> [BATTLE]: Yes, sir.

Defense counsel objected to this line of questioning and argued that the State was improperly bolstering its witness. The trial court overruled the objection, and the questioning continued:

> [STATE]: All right Mr. Battle, you said you lied. Did you lie about the fact that you were at the hotel?
> [BATTLE]: No, sir.
> [STATE]: Did you lie about the fact that you were in the car that eventually was in the crash?
> [BATTLE]: No, sir.
> [STATE]: Did you lie about the fact that Mr. Howard was in the car with you?
> [BATTLE]: No, sir.
> [DEFENSE]: Objection; leading.
> [THE COURT]: Sustained; rephrase.
> [STATE]: Did you tell them if someone was with you during the time of the robbery?
> [BATTLE]: Yes, sir.
> [STATE]: Who did you tell them was with you?
> [BATTLE]: Mr. Howard.
> [STATE]: Okay. Did you tell them that you committed a robbery?
> [BATTLE]: Yes, sir.
> [STATE]: Did you tell them that you were successful in gaining property from the victim?
> [BATTLE]: Yes, sir.
>   . . . .
> [STATE]: Did you tell them that you wore a ski mask?
> [BATTLE]: Yes, sir.
> [STATE]: Did you tell them that you had a gun?
> [BATTLE]: Yes, sir.
> [STATE]: You told them you had the gun?
> [BATTLE]: Yes, sir.
> [STATE]: Did you tell them that initially? Did you, right out of the gate, say "I have a gun"?
> [BATTLE]: No, sir.
> [STATE]: Is that one of the things you lied about?
> [BATTLE]: Yes, sir.
> [STATE]: What did you say initially?
> [BATTLE]: I told them that I had a screwdriver.
>   . . . .
> [STATE]: You never had a screwdriver; did you?
> [BATTLE]: No, sir.
> [STATE]: You only had the gun?

[BATTLE]: Yes, sir.

. . . .

[STATE]: Mr. Battle, you lied once before to the police. Are you lying today?

[BATTLE]: No, sir.

[DEFENSE]: Objection, Your Honor; improper question.

[THE COURT]: Overruled.

[STATE]: Why should this jury believe you today?

[DEFENSE]: Objection, Your Honor; improper bolstering.

[BATTLE]: Because –

[THE COURT]: Haven't heard the answer yet. Overrule the objection.

[BATTLE]: I lied to the police because I never been in trouble. So I thought that I would have got a little leeway. I see that it's a serious charge so I might have owned up to it instead of trying to keep lying about it and keep fighting it.

At closing argument, one of the major points of contention between the two parties was Battle's role in testifying for the State and whether Battle was going to receive leniency for being a witness. The defense also raised the question of Battle's veracity. In rebuttal, the State argued:

Lawyers are like magicians. And if Ms. Shane is to be believed, I'm an amazingly good one. A magician gets you to look at the left hand while the right hand is doing something. A magician gets you to believe that something is true even though your rational mind tells you there's no way it could be. And if you're listening to Ms. Shane and you're believing her, you believed that what's happening here is that I, as a representative of the State and the attorney assigned to this case, have just perpetrated an amazing fraud on everyone who sat here and watched this entire trial. Know there are documents with my name and my bar number and the bar number of another attorney and his signature signed on them, we have said that there is no deal that there is no benefit to be given to Mr. Battle, and yet there is. And though it is very clear from the evidence that the only person at the end of the day who has any decision making power as to what happens with Mr. Battle is the judge and not me. There's somehow some amazing magic trick going on and you've all been duped.

> But I would suggest to you that lawyers are like magicians, but that the magician in this case is not me it's Ms. Shane.
>
> . . . .
>
> . . . You need to just look at things and ask yourself what's happening in the real world and what really happened in this case. And what's happening is that over and over magician Ann Shane is getting you to look at the left hand because she doesn't want you to look at the right. . . .
>
> . . . .
>
> But again, look at the left hand; please, God, don't look at the right because if you look at the right your guts [sic] only going to tell you one thing and that's guilty.

The State also implored the jury "to not fall for the magic trick." The jury ultimately returned a verdict of guilty on all counts.

Howard argues on appeal that the trial court abused its discretion by allowing the State to introduce Battle's prior consistent statements on direct examination in an effort to preemptively bolster Battle's testimony. Further, Howard contends that the State's closing argument denied him a fair trial because the State disparaged defense counsel and referred to materials not in evidence that also improperly bolstered Battle's credibility. While either error may have required reversal on its own, acting in concert, these errors indubitably denied Howard a fundamentally fair trial. Hence, we need not analyze whether either error on its own would require a new trial under the facts of this case.

On the first issue, prior consistent statements are generally inadmissible hearsay and cannot be used solely to corroborate or bolster a witness's testimony. Tumblin v. State, 29 So. 3d 1093, 1100 (Fla. 2010). Prior consistent statements are admissible nonhearsay when the declarant is available to testify at trial and is subject to cross-examination and when the statement is "offered to rebut an express or implied

charge against the declarant of improper influence, motive, or recent fabrication." § 90.801(2)(b), Fla. Stat. (2013). However, "[t]here must be an initial attempt on cross-examination to demonstrate the improper influence, motive or recent fabrication" before prior consistent statements may be admitted under this exception. Foburg v. State, 744 So. 2d 1175, 1179 (Fla. 2d DCA 1999) (quoting Jenkins v. State, 547 So. 2d 1017, 1020 (Fla. 1st DCA 1989)).

Here, Battle testified that he was in a car with Howard and that he had committed a robbery in the motel parking lot prior to being arrested. Following this testimony, the State asked Battle whether these were facts that he had told police during his prior interview, and Battle confirmed that they were. The purpose of this line of questioning was to show that Battle had previously told police the same facts that he was testifying to at trial, which is exactly the type of evidence that is prohibited by the hearsay rule on prior consistent statements. And while the State properly argues that prior consistent statements may be used to rehabilitate a witness, the State in this case introduced Battle's prior statements on direct examination before Howard had the opportunity to cross-examine. Of course, the State's target strategy was to lessen the impact of Battle's prior claim that a screwdriver, instead of a gun, was used during the robbery. As a result, the State's solicitation of Battle's prior consistent statements was deliberately premature and had the unfortunate effect of impermissibly bolstering Battle's testimony.

On the second issue, the State also committed error by making several highly improper comments during its closing argument. Closing argument is not intended to be an unfair display of glib oratory skills that impugn opposing counsel or

- 6 -

bolster a witness's testimony; an attorney is limited to "assist[ing] the jury in analyzing, evaluating, and applying the evidence." Williamson v. State, 994 So. 2d 1000, 1012 (Fla. 2008). For example, and germane to this end, it is error for an attorney to bolster the testimony of a witness during closing argument by vouching for his or her credibility, providing an opinion on the witness's truthfulness, referring to information outside of evidence that would support the witness's testimony, or otherwise placing "the prestige of the government behind the witness." Hutchinson v. State, 882 So. 2d 943, 953 (Fla. 2004), abrogated on other grounds by Deparvine v. State, 995 So. 2d 351 (Fla. 2008). It is also improper to make any statement during closing argument that denigrates defense counsel or the defense strategy, Johns v. State, 832 So. 2d 959, 962 (Fla. 2d DCA 2002), including any comments made to suggest that the defense is attempting to perpetuate a fraud on the jury, Kennerdy v. State, 749 So. 2d 507, 507 (Fla. 2d DCA 1999).

Here, the State made several comments referring to defense counsel as a magician and implying that magicians are fraudulent and "dupe" people. Contrary to the State's assertions on appeal, these comments go beyond merely referring to defense counsel as a skilled tactician but instead suggest that she was relying on deceit to magically trick the jury into deciding in favor of the defendant. Notably, comments that "impugn the integrity or credibility of opposing counsel" are fundamental error by themselves. Wicklow v. State, 43 So. 3d 85, 88 (Fla. 4th DCA 2010).

In addition, during both trial and closing argument, there was a great deal of dispute over whether Battle's testimony could be believed in light of the fact that he was a codefendant testifying for the State. Whether Battle was to receive leniency in

his own sentencing was a major point of contention between the parties. For the State to argue at closing that there were "documents with [the prosecutor's] name and [the prosecutor's] bar number . . . and his signature signed on them" that showed Battle was not receiving a deal for his testimony was a grossly improper reference to information not in evidence that had the calculated effect of bolstering Battle's testimony after the fact.

Also, and contrary to the State's assertion on appeal, Howard's conviction was dependent in large part on Battle's testimony. Battle testified that Howard handed him the gun, told him to commit the robbery, and was otherwise an active participant in the crime. The only other evidence suggesting Howard had any involvement at all came from the victim's testimony that a car pulled up next to Battle after the robbery had already occurred, that Battle got into the car, and that the two drove away, none of which is sufficient to show Howard had the requisite mental state to be charged as a principal for the armed robbery. See Staten v. State, 519 So. 2d 622, 624 (Fla. 1988) ("[M]ere presence at the scene . . . or a display of questionable behavior after the fact, is not sufficient to establish participation [as a principal].").

Even more troubling are the State's assertions to the jury that "there is no benefit to be given to Mr. Battle" for his testimony and that only the trial court could decide whether Battle would receive leniency. This is belied by the State later waiving, at Battle's sentencing, the ten-year mandatory minimum in exchange for Battle having testified against Howard. This also confirmed the hollowness in the State telling the jury that "the only person at the end of the day who has any decision making power as to what happens with Mr. Battle is the judge."

Because Howard did not object to any of the State's improper comments during closing argument, this court must find fundamental error to reverse. See Kilgore v. State, 688 So. 2d 895, 898 (Fla. 1996). Fundamental error is "error that reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Id. (alteration in original) (quoting State v. Delva, 575 So. 2d 643, 644-45 (Fla. 1991)) (internal quotation marks omitted). Because the State's comments during closing argument had the effect of bolstering Battle's testimony on critical facts on which the State's case relied, this improper commentary constituted fundamental error.

While any of the aforementioned errors on their own could arguably be used to overturn Howard's conviction, there is no doubt that the errors committed at Howard's trial cumulatively necessitate a new trial. Accordingly, we reverse and remand for a new trial.

Reversed and remanded.


DAVIS, C.J., and CASANUEVA, J., Concur.