NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


DEVIN GREGORY ROOP, DOC #C06445, )
                                        )
             Appellant,                 )
                                          )
v.                                            )        Case No. 2D15-1573
                                          )
STATE OF FLORIDA,           )
                                          )
             Appellee.                )
_____ )


Opinion filed October 4, 2017.

Appeal from the Circuit Court for Polk
County; John K. Stargel and Kelly P. Butz,
Judges.

Anthony M. Candela of Candela Law Firm,
Riverview, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Cornelius C. Demps,
Assistant Attorney General, Tampa, for
Appellee.


SALARIO Judge.

         Devin Gregory Roop appeals his convictions and sentences for throwing a

deadly missile at an occupied vehicle, see § 790.19, Fla. Stat. (2013), and criminal

mischief ($200 or less), see § 806.13(1)(b)(1), Fla. Stat. (2013).  We affirm in all

respects.  We write only to address Mr. Roop's argument that the trial court erroneously

admitted at trial that portion of a recording of a 911 call placed by the victim, Frank Yeater, during which Mr. Yeater identified Mr. Roop as the perpetrator. Mr. Roop contends that Mr. Yeater's statement on the recording was inadmissible hearsay. The trial court admitted the statement based on the State's contention that the spontaneous statement and excited utterance exceptions to the hearsay rule applied. See § 90.803(1), (2), Fla. Stat. (2014). We find no abuse of discretion in the trial court's admission of Mr. Yeater's statement of identification under the excited utterance exception and further conclude that the admission of that statement, even if error, was harmless under the facts of this case.

## I.

Someone threw a metal pipe at Mr. Yeater's truck as he was driving along a stretch of road in Lake Wales. Mr. Yeater said that someone was Mr. Roop. Mr. Roop's stepfather, however, said that Mr. Roop had been at his house all day on the day in question. The jury believed Mr. Yeater and convicted Mr. Roop.

At the time of the incident, Mr. Yeater had known Mr. Roop for well over a decade. They had grown up in the same neighborhood and gone to the same school, and they used to be friends. Over time, the friendship fizzled and the relationship turned sour. The two men spoke disrespectfully to one another, and Mr. Yeater felt insulted by Mr. Roop. On New Year's Eve 2013, there was an incident between Mr. Yeater and Mr. Roop's stepbrother. Mr. Roop was there when it happened. The police were called to the scene of the incident, but no one was charged with any offenses.

Five days later—around noon on January 5, 2014—Mr. Yeater was driving his truck down a two-lane country road. He noticed a black car approaching him from

behind at a quick pace. The car moved to pass Mr. Yeater's truck in the opposite lane. According to Mr. Yeater, Mr. Roop leaned out of the car's rear passenger window and threw something at Mr. Yeater's truck. Mr. Roop knew that the truck was Mr. Yeater's because he had seen him driving it before. The object struck the driver's side door near the handle, missing Mr. Yeater but damaging the truck.

Seconds later, Mr. Yeater turned around, returned to where the incident occurred, and called 911 from his mobile phone. About two minutes passed between the incident and the 911 call. After confirming his location, Mr. Yeater told the 911 operator that he had been driving down the road when Mr. Roop passed his car and threw something at the truck. He stayed on the phone with the operator, searched for whatever had hit his truck, and narrated his search to the 911 operator. The search led to the discovery of a metal pipe. A sheriff's deputy was sent to the scene, took photographs of the damage to Mr. Yeater's truck, and recovered the pipe. Law enforcement was unable to recover fingerprints from the pipe. The State charged Mr. Roop with throwing a deadly missile and criminal mischief.

The case proceeded to trial. After the jury was selected, but before any evidence was presented, the trial court heard a motion the State filed earlier that day seeking a ruling on the admissibility of a recording of Mr. Yeater's call to 911, including his statement on that call that Mr. Roop was his assailant. Without objection from either side, the motion was presented to the trial court based on the parties' statements of what the evidence would show and a recording of the 911 call. The State proffered that Mr. Yeater would testify that a couple of minutes after the pipe was thrown at the car, Mr. Yeater pulled over to the side of the road, called 911, and identified Mr. Roop as the

perpetrator and argued that Mr. Yeater was excited at the time of the 911 call even though he might seem calm on the recording. It argued and requested a determination that Mr. Yeater's identification of Mr. Roop was admissible as either an excited utterance or a spontaneous statement. Mr. Roop's counsel stated that Mr. Yeater testified at deposition that he was initially going to "forget about it," but then decided to turn around because he was concerned that "something further might happen" with Mr. Roop and he wanted to "put it on the record." He argued that this showed that Mr. Yeater was not under the stress of the excitement caused by the event when he called 911 such that the excited utterance exception would apply and further that the lapse of time before calling 911 also prevented the spontaneous statement exception from applying. The trial court then listened to the full recording of the 911 call and thereafter ruled that a redacted recording, which included Mr. Yeater's identification of Mr. Roop as the perpetrator, would be admissible.[1]

Mr. Yeater was the State's first witness at trial. He related the facts of the offense, including his identification of Mr. Roop as the perpetrator and his discovery of the metal pipe, just as described above. After he described what happened, the State asked Mr. Yeater about his call to 911, and the following exchange occurred:

> THE STATE: Did the black car that was containing Mr. Roop pull over on the side of the road after this?
>
> MR. YEATER: No. It continued even quicker to get away.
>
> THE STATE: Okay. Did you pull over on the side of the road?

---

[1]The redactions are not pertinent to this appeal.

- 4 -

MR. YEATER:  At first I continued to keep on going, and then I decided to turn around and—to go grab— see whatever it was, and then go pick it up.

THE STATE:  Did you call 911?

MR. YEATER:  Yes.

THE STATE:  About how long after this incident occurred did you call 911?

MR. YEATER:  Two minutes.

THE STATE:  Are you approximating two minutes?

MR. YEATER:  Yes, it was approximately two minutes.

THE STATE:  Okay.  Are you scared at this point?

MR. YEATER:  Yes.  I was scared at that point.

THE STATE:  Feeling any other emotions.

MR. YEATER:  Yes, I was frightened, I didn't know what—I didn't know what his intentions were to do.

The trial court thereafter excused the jury so that it could listen to the redacted recording the State had prepared in accord with its earlier instructions.  After listening to the recording, the trial court asked the parties for comment.  Although Mr. Roop renewed his objections to the admission of the recording, he did not seek to voir dire Mr. Yeater about the circumstances surrounding the 911 call or to present other evidence bearing on the admissibility of Mr. Yeater's statements to 911 as excited utterances or spontaneous statements.  The redacted recording was admitted over Mr. Roop's renewed objection, and the jury heard Mr. Yeater's identification of Mr. Roop as his assailant and his narration of his search of the object that struck his truck.

- 5 -

On the cross-examination that followed, Mr. Yeater stated that, after his truck was hit by the pipe, he initially intended to continue driving but decided seconds later to turn around. On redirect, Mr. Yeater stated that he "was just going to let it go" at first but then had decided to call the police "[b]ecause after initially thinking of who it was, I knew this wasn't going to be a—it wasn't going to stop with Devin Roop." No additional objection was raised based on this testimony.

After the State rested, Mr. Roop called his stepfather, Russell Brown, Sr. Mr. Brown has known Mr. Roop since he was born and considers him a son. His biological son is the stepbrother of Mr. Roop and was involved in the incident with Mr. Yeater five days before the pipe was thrown at his car. Mr. Brown testified that on the day of the incident, Mr. Roop had been at his residence all day to celebrate the birthday of Mr. Roop's mother.

On cross-examination, Mr. Brown admitted that until he was subpoenaed by the State toward the end of 2014, he had not mentioned to anyone that Mr. Roop had been with him that day. He also admitted that he knew before then that Mr. Roop was being prosecuted for throwing a pipe at Mr. Yeater's truck. He initially said he had not mentioned anything about Mr. Roop's alibi because he was "try[ing] not to get into none of that." Later, however, he stated that he did not say anything because he had not realized that the incident with Mr. Yeater happened on the same day as the celebration at his house. Mr. Brown testified, without objection, that although he discussed this prosecution with Mr. Roop, Mr. Roop never told him that the incident happened on the same day he spent at Mr. Brown's house. Mr. Roop did not testify.

The jury found Mr. Roop guilty on both counts. After denying Mr. Roop's motion for new trial, the trial court sentenced him to concurrent terms of fifteen years' imprisonment as a prison releasee reoffender on the count for throwing a deadly missile and to time served on the count for criminal mischief. This is Mr. Roop's timely appeal.

II.

Mr. Roop asserts that the trial court erred in admitting the redacted recording of the 911 call containing Mr. Yeater's identification of Mr. Roop because it "was completely hearsay" and "[t]here was no indication on the record that the evidence was introduced to show state of mind or an excited utterance (or some other hearsay exception)." The State counters that it laid a sufficient predicate to admit the recording of the 911 call as an excited utterance or a spontaneous statement. We agree with the State that admitting this statement as an excited utterance was within the trial court's discretion.

Although we review a trial court's decision concerning the admissibility of evidence for abuse of discretion, we are mindful that the trial court's discretion is limited by the rules of evidence and controlling decisions interpreting them. See Davis v. State, 121 So. 3d 462, 481 (Fla. 2013) (first citing Hudson v. State, 992 So. 2d 96, 107 (Fla. 2008); and then quoting Hayward v. State, 24 So. 3d 17, 29 (Fla. 2009)). Under the evidence rules, a victim's prior statement—like Mr. Yeater's recorded statement—is generally inadmissible hearsay, see §§ 90.801(1)(c), .802, and thus cannot be used to corroborate the victim's consistent, in-court testimony. See Tumblin v. State, 29 So. 3d 1093, 1100 (Fla. 2010). A victim's prior consistent statement may be admitted as substantive evidence, however, when it meets an exception to the rule against hearsay,

- 7 -

Rodriguez v. State, 609 So. 2d 493, 500 (Fla. 1992), or when it is not hearsay, see Taylor v. State, 855 So. 2d 1, 23 (Fla. 2003).[2]  The excited utterance exception makes a hearsay statement admissible when the statement relates "to a startling event or condition [and was] made while the declarant was under the stress of excitement caused by the event or condition."  § 90.803(2).

As interpreted by the courts, to qualify for admission under the excited utterance exception, "the statement must be made: (1) 'regarding an event startling enough to cause nervous excitement'; (2) 'before there was time to contrive or misrepresent'; and (3) 'while the person was under the stress or excitement caused by the event.' "  Hudson, 992 So. 2d at 107 (quoting Henyard v. State, 689 So. 2d 239, 251 (Fla. 1996)); see also Hayward, 24 So. 3d at 29 (relying on Hudson for the same proposition).  The proponent of an excited utterance must lay a proper foundation establishing each of these three elements.  Thomas v. State, 125 So. 3d 928, 930 (Fla. 4th DCA 2013); see also Tucker v. State, 884 So. 2d 168, 173 (Fla. 2d DCA 2004) (requiring that a preponderance of the evidence establish all three elements).  A trial court's decision that the proponent of the statement has laid that foundation is reviewed by appellate courts for abuse of discretion.  See, e.g., Williams v. State, 967 So. 2d 735, 748 (Fla. 2007) (applying abuse of discretion standard to trial court's determination that there had not been sufficient time for reflective thought); Taylor v. State, 146 So. 3d 113, 116 (Fla. 5th DCA 2014) ("Whether the declarant made an excited utterance is a

[2]We do not further address whether this particular statement was not hearsay within the stated definition and its exceptions in section 90.801 because this issue was not raised and because, assuming that it was hearsay, it was still admissible under the excited utterance exception of section 90.803.

preliminary question of fact for the trial court, and the court's ruling is reviewed for an abuse of discretion.").

Under that standard of review, we are bound to affirm the trial court's admission of Mr. Yeater's identification of Mr. Roop to 911 so long as that decision was not arbitrary, fanciful, or unreasonable in the sense that reasonable people could not conclude that the State's predicate was sufficient to admit it as an excited utterance.[3] See Graham v. State, 207 So. 3d 135, 142 (Fla. 2016) (quoting Canakaris v. Canakaris,

_____

[3]We pause to express concern about the procedure the trial court followed in admitting the recording. The proper procedure to resolve an excited utterance question is to conduct a hearing outside the presence of the jury, take whatever evidence is necessary, and make findings concerning the elements of the exception. Tucker, 884 So. 2d at 173. Here, the trial court conducted an initial hearing based on the parties' representations of what the testimony would be and then heard evidence on the issue in the State's case-in chief. In admitting the recording, the trial court did not state that it was relying on the excited utterance exception (as distinguished from the spontaneous statement exception) and did not make express findings concerning its elements. We nonetheless regard the trial court's determination that the 911 call was admissible as including a finding that the excited utterance exception applied for two reasons. First, Mr. Roop did not object to any aspect of the procedure in the trial court, has not raised any aspect of that procedure as an issue on appeal, and names only the excited utterance exception in his brief. See I.R.C. v. State, 968 So. 2d 583, 588 (Fla. 2d DCA 2007) (explaining that appellate courts reverse only on the basis of arguments presented); cf. Morrison v. State, 161 So. 3d 564, 565 (Fla. 2d DCA 2014) (reaching argument concerning absence of hearing and predicate findings where appellant specifically raised the issue). Second, the predicate the State laid during trial was directly related to the elements of the excited utterance exception—including evidence of the defendant's excited state at the time of the 911 call—which gives assurance that the trial court's decision was based on that predicate. Moreover, to the extent that the trial court might have considered Mr. Yeater's statement of identification under the spontaneous statement exception—the only other basis argued by the State—that exception also requires the trial court to engage in the same factual considerations related to whether the declarant might have engaged in reflective thought before allowing the statement as is required by the excited utterance exception. See Ibar v. State, 938 So. 2d 451, 467 (Fla. 2006). Either alternative requires the same conclusion—the trial court decided that that the statement was admissible under section 90.803 based on a factual determination on the element related to reflective thought. As our analysis in the text makes clear, the potential for reflective thought is the only controversial issue in this case.

382 So. 2d 1197, 1203 (Fla. 1980), and applying its standard to the trial court's evidentiary decision); Ballard v. State, 66 So. 3d 912, 917 (Fla. 2011) (applying Canakaris to an evidentiary decision).  This standard is satisfied as to each of the three elements of the excited utterance exception.

Startling event.  Before the 911 recording was admitted over Mr. Roop's renewed objection, Mr. Yeater testified that while he was driving his truck, a car quickly overtook him and a passenger threw a metal pipe at him, damaging his truck.  We have no hesitation in concluding that reasonable people could find that this testimony established an event startling enough to cause nervous excitement.  No one in this case—neither Mr. Roop nor the dissent—contends otherwise.

Time to contrive or misrepresent.  Likewise, we have little difficulty concluding that a reasonable jurist could find that the State sufficiently established that Mr. Yeater identified Mr. Roop to 911 before there was time to contrive or misrepresent. In making such decisions, the courts have eschewed bright-line, hours-and-minutes rules based on the time between the startling event and the declarant's statement.  See Rogers v. State, 660 So. 2d 237, 240 (Fla. 1995); Rivera v. State, 718 So. 2d 856, 858 (Fla. 4th DCA 1998).  Rather, the inquiry focuses on whether, under all of the circumstances, it is more probable than not that the interval of time was sufficiently long for the declarant to have engaged in reflective thought.  Tucker, 884 So. 2d at 174; see also State v. Jano, 524 So. 2d 660, 662-63 (Fla. 1988).  The nature and severity of the startling event, the length of time between the event and the statement, the declarant's state of mind at the time of the statement, and substance and context of the statement are all relevant data points in this evaluation.  See J.A.S. v. State, 920 So. 2d 759, 763

- 10 -

(Fla. 2d DCA 2006) (finding time for reflective thought when the event was a minor fight, the statement was made at least fifteen minutes after an officer was dispatched and the record did not reflect how much time passed before the officer was dispatched, and there was little to no evidence of excitement); Charles W. Ehrhardt, Ehrhardt's Florida Evidence, § 803.2, at 1020-22 (2016 ed.) (describing relevant factors).

The State's predicate in this case was sufficient to establish the absence of time to contrive or misrepresent. Through Mr. Yeater's testimony and the recording of his 911 call, the State showed that (1) someone threw a metal pipe at Mr. Yeater while he was driving; (2) Mr. Yeater believed it was Mr. Roop; (3) shortly thereafter, Mr. Yeater turned around to find the object; (4) he called 911 roughly two minutes after his truck had been struck by the object; (5) at the time he called 911, he was frightened and scared because he was worried about what else Mr. Roop, with whom he shared some bad blood and a recent incident, might try to do; and (6) after responding to the 911 operator about his location, Mr. Yeater immediately and without hesitation stated that Mr. Roop had thrown the pipe at him. This testimony and evidence may reasonably be interpreted as establishing an out-of-the-ordinary and dangerous startling event, a short interval between the event and the statement, a frightened declarant concerned for his safety, and a fast and confident identification of the perpetrator to the law enforcement officials. In our view, these circumstances were sufficient to permit a reasonable trial judge to conclude that at the time he identified Mr. Roop as his assailant, Mr. Yeater was acting on impulse and not with the benefit of time sufficient to overcome his instincts and fabricate a story.

- 11 -

Although we have been unable to locate an excited utterance case on precisely these facts, Florida courts have found the exception properly applied in cases involving facts that we would expect to provoke a similar level of excited reaction, as well as on facts that involve more stressful events but also substantially longer intervals between event and subsequent statement than involved here.  See, e.g., Cox v. State, 473 So. 2d 778, 782 (Fla. 2d DCA 1985) (holding that wife's statements to law enforcement at her home and en route to the hospital after being informed of her husband's involvement in a traffic accident were admissible as excited utterances in subsequent prosecution for DUI manslaughter); Taylor, 146 So. 3d at 116 (holding that statements made "minutes" after event by ex-girlfriend whose armed ex-boyfriend walked in front of her car while she was driving, yelled insults, and threatened to kill her were admissible as excited utterances notwithstanding officer's testimony that she calmed down as she was talking to her); Werley v. State, 814 So. 2d 1159, 1161 (Fla. 1st DCA 2002) (holding that statements by domestic battery victim who was struck in the head with a bottle made more than one hour after the incident were admissible as excited utterances); Edwards v. State, 763 So. 2d 549, 550-51 (Fla. 3d DCA 2000) (holding that statement by witness made at least ten minutes after a serious automobile accident was admissible as an excited utterance in subsequent DUI prosecution); Rivera, 718 So. 2d at 858 (holding that statements made by battery victim to police officer fifteen minutes after the officer saw the victim screaming and waving her hands while crying was admissible as an excited utterance).  The trial court's admission of the 911 call is not at all out of line with the results in these cases or, for that matter, any

- 12 -

other case that has been cited to us.  We thus cannot find an abuse of discretion on the issue of whether Mr. Yeater had sufficient time to contrive or misrepresent.

The dissent reaches a different conclusion because it believes the record shows that Mr. Yeater "acknowledged" having had the "ability to reflect"  because he testified that he initially kept driving but then decided to turn around to see what had been thrown at him and call 911.  From there, it reasons that the trial court erred by failing to require the State to further prove that Mr. Yeater did not in fact engage in reflective thought.  See Williams, 967 So. 2d at 748 ("If sufficient time passed for reflective thought, the proponent for admission of the statement must show that reflective thought did not occur.").  This argument misses the mark for two reasons.

The first is procedural.  The argument that Mr. Yeater acknowledged the passing of sufficient time for reflective thought, and that the State was therefore required to prove that he did not in fact reflectively think, is an argument only of the dissent's creation.  Mr. Roop has not presented the argument for our decision because he has not made the argument anywhere in his brief.  Indeed, he did not even make this argument in the trial court.  The dissent's judgment that we should reverse on the basis of a ground not argued is "at odds with the structure of the appellate process which requires that a reviewing court ordinarily reverse only on the basis of the specific arguments presented by the appellant." I.R.C. v. State, 968 So. 2d 583, 588 (Fla. 2d DCA 2007); see also Philip J. Padovano, Florida Appellate Practice § 16.9, at 308 (2016 ed.) ("Generally, the appellate court will not reverse a case on a ground that was not

argued in the briefs.").  Since this argument has not been presented to us as a ground for reversal, we ought not to be reversing because of it.[4]

The second is substantive.  Our standard of review here is abuse of discretion, which means that the dissent must show that its construction of the evidence—i.e., that Mr. Yeater acknowledged having the time to reflect—is the only reasonable one.  Truth be told, Mr. Yeater did not acknowledge having the ability to reflect in the sense of having admitted that he had time to do so.  That is just the dissent's interpretation of his testimony that after the pipe hit his truck, he initially continued driving and then decided to turn around.  That, however, is not the only reasonable interpretation of Mr. Yeater's testimony.  On the contrary, before it admitted the 911 recording over Mr. Roop's renewed objection, the trial judge heard Mr. Yeater's testimony that he and Mr. Roop had an aborted friendship, that there had been an incident involving the two men just five days prior to the pipe-throwing incident, and that, when he decided to turn around, Mr. Yeater believed Mr. Roop had just thrown a heavy object at him and was frightened, scared, and unsure of what Mr. Roop's intentions were.  We note in this regard that the trial court had the ability to observe Mr. Yeater on the stand and to assess his credibility with regard to these predicate facts—a perspective that should cause us, as an appellate court, to be reticent to upend its

---

[4]Mr. Roop's statement in his brief that the 911 call is "completely hearsay" that is not subject to "an excited utterance (or some other hearsay exception)," is insufficient to present for review the argument the dissent raises.  See Caldwell v. Fla. Dep't of Elder Affairs, 121 So. 3d 1062, 1064 (Fla. 1st DCA 2013) (holding that "perfunctory statements are insufficient to present an argument for appellate review"); Hammond v. State, 34 So. 3d 58, 59 (Fla. 4th DCA 2010) ("Claims for which an appellant . . . provides only conclusory argument . . . are insufficiently presented for review and are waived." (citing Doorbal v. State, 983 So. 2d 464, 482-83 (Fla. 2008))).

judgment about those facts.  See Tucker, 884 So. 2d at 175 (describing the superior vantage point of the trial judge when the declarant testifies to the predicate facts related to the admission of statements made during a 911 call as excited utterances).

One reasonable inference from the facts to which Mr. Yeater testified is that that the two-minute interval of time between the pipe hitting his truck and his call to 911 was sufficient only for decision driven by fear and instinct, rather than conscious deliberation.  It is not at all difficult to imagine someone in the situation to which Mr. Yeater testified, alone on an isolated road and just having had a pipe thrown at his truck by a person with whom he had a bad history, being frightened about that person's next move and impulsively thinking "I'd better call 911 because I don't know what he's going to do next."  That kind of decision—made a very short time after the startling event—can quite reasonably be interpreted as the product of reaction to a startling situation rather than the product of time for conscious deliberation, much like any crime victim might decide to call 911 in the wake of the stressful event.   A decision to admit Mr. Yeater's statement to 911 based on that interpretation of the evidence, therefore, would be one a reasonable judge could make.  The fact that the dissent might have a different interpretation of the evidence is insufficient to overcome the abuse of discretion standard we apply to the trial court's decision.[5]  See Williams, 967 So. 2d at 748

---

[5]The dissent emphasizes defense counsel's characterization of testimony Mr. Yeater purportedly gave in his deposition that he called 911 after "he thought about it a little more" and decided to "put [the events] on the record" because "something else might happen." We think that emphasis misplaced.  First, as described in the text, that is not how Mr. Yeater testified at trial about his decision to call 911.  Second, Mr. Roop never provided the trial judge with the deposition, and the deposition is not a part of our appellate record.  And finally, although defense counsel's description of Mr. Yeater's deposition testimony is more indicative of conscious deliberation than Mr. Yeater's testimony at trial, it is not inconsistent when taken together with the other facts of

("Williams argues that the fact that Dyke may have attempted to shower demonstrates reflective thought, and, therefore, the 911 statements do not qualify as excited utterances. While this assertion may be arguable, we conclude that it is insufficient to overcome the abuse of discretion standard necessary to overturn the trial court's evidentiary ruling."); Vanevery v. State, 980 So. 2d 1105, 1107 (Fla. 4th DCA 2008) ("Appellant argues that the recording of the 911 call demonstrates, from the calm tone of the caller, who may have been speaking quietly in order to not be heard by appellant, that it was not an excited utterance. . . . In this case we are unable to say that the court abused its discretion . . . .").

Under the stress of excitement. Mr. Yeater testified that at the time he called 911 he was scared, frightened, and unsure of Mr. Roop's intentions. No one contends in this appeal that this testimony was insufficient to show that Mr. Yeater remained under the stress of excitement caused by the throwing of a pipe at his truck when he identified Mr. Roop to the 911 operator. Accordingly, the trial court did not abuse its discretion in admitting the recording of that identification.

III.

Even if the trial court had erred in admitting the recording of Mr. Yeater's identification of Mr. Roop to 911, we would not regard the error as harmful. Trial court error is harmful when there is a reasonable possibility that the error affected the verdict. State v. DiGuilio, 491 So. 2d 1129, 1139 (Fla. 1986). There are two ways in which Mr. Yeater's identification of Mr. Roop might be seen as affecting the factfinding process

record, for the trial court to have concluded that Mr. Yeater called 911 out of fear that Mr. Roop might do something else rather than because he had sufficient time to contrive or misrepresent.

- 16 -

here: (1) as substantive evidence that Mr. Roop was Mr. Yeater's assailant and (2) as a prior consistent statement that bolstered Mr. Yeater's credibility.

The first possibility is easily disposed of. As substantive evidence of Mr. Roop's guilt, the evidence was merely cumulative of Mr. Yeater's trial testimony. See Torres-Arboledo v. State, 524 So. 2d 403, 408 (Fla. 1988) (holding that the admission of hearsay testimony was harmless where it was cumulative to other properly admitted evidence); Bogdanon v. State, 763 So. 2d 376, 377 (Fla. 2d DCA 2000) (holding that admission of hearsay medical records in battery prosecution was harmless error where they were cumulative of the doctor's testimony). Mr. Yeater identified Mr. Roop as his assailant during his live testimony at trial and was examined in detail on direct and cross about that identification. As substantive evidence of Mr. Roop's identity as the perpetrator, the 911 recording was not accretive in any way that mattered. See, e.g., Aiken v. State, 44 So. 3d 152, 155 (Fla. 4th DCA 2010) (explaining that even if rape victim's identification of assailant to 911 was improperly admitted as an excited utterance, it was harmless where it "merely corroborated" her trial testimony).

Superficially, the second possibility—that the admission enhanced the credibility of Mr. Yeater's in-court testimony in the jury's mind because he said the same thing to 911—appears more problematic. This trial boiled down to a credibility contest between Mr. Yeater, who said Mr. Roop threw a pipe at him, and Mr. Brown, who said that Mr. Roop was at his house at the time. The State played the recording for the jury again in closing and argued about it at reasonable length. Our cases say that the credibility-enhancing effect of an improperly admitted prior consistent statement can be

harmful in close cases like this.  See, e.g., Szuba v. State, 749 So. 2d 551, 553 (Fla. 2d DCA 2000); Keffer v. State, 687 So. 2d 256, 258 (Fla. 2d DCA 1996).

Looking beneath the surface, however, two related facts specific to this case convince us that any bolstering effect from the admission of the 911 call was immaterial.  The first is that the defense attack on Mr. Yeater's credibility hinged on a specific motive to fabricate—the history of bad feelings between Mr. Roop and Mr. Yeater, which hit a low-point in the incident with Mr. Roop's stepbrother a few days before the offense.  That motive, however, preexisted both the 911 call and the trial.  Thus, if Mr. Yeater's trial testimony that Mr. Roop was his assailant was suspect because of a motive to lie, his statement to 911 was equally suspect for the same reason.  It is very hard to see how a jury would consider the trial testimony of a witness with a motive to lie more credible simply because the same witness said the same thing at an earlier time when he had the same motive to lie.  The most natural inference, if one thought the witness might be lying in court, is that he might have been lying at the time of the earlier statement as well.  Thus, the bolstering effect such a prior consistent statement on the facts of this case, if any, would have been minimal.[6]  See Chandler v. State, 702 So. 2d 186, 197-98 (Fla. 1997) (holding that improper admission of prior consistent statement was harmless when motive to falsify existed when statement was made and stating that although "the statement may have bolstered [the witness's]

---

[6]It is important to note that no one believed that this was a case of mistaken identity.  As defense counsel put it in closing argument, the question was which side was lying.  The jury understood well that, before the accident, Mr. Yeater knew who Mr. Roop was and did not like him much.  Thus, although the dissent relies heavily on the State's emphasis on the 911 call in closing, the fact remains that Mr. Yeater's motive to lie was laid bare for the jury to see.

credibility, we conclude . . . that the jury had ample information from which to assess [her] credibility and weigh her testimony accordingly").

The second salient feature of this case from a harmless error perspective is that the credibility of Mr. Brown's testimony establishing Mr. Roop's alibi was badly damaged on cross-examination. Cf. Newton v. State, 160 So. 3d 524, 526-27 (Fla. 2d DCA 2015) (holding that exclusion of hearsay statement exonerating defendant was harmless where the statement and the trial testimony it corroborated were incredible); Rivera v. State, 840 So. 2d 284, 289, 292 (Fla. 5th DCA 2003) (stating, in both the majority and the special concurrence, that prosecutor's positive comment on victim's credibility was harmless where the defendant's testimony was highly incredible). Mr. Brown—who viewed himself as Mr. Roop's father and who was the father of the man from the New Year's Eve incident with Mr. Yeater—admitted on cross-examination that he was aware that Mr. Roop was being prosecuted, yet told no one about the facts establishing Mr. Roop's alibi for nearly a year. His explanation for keeping mum was shifting and highly incredible—initially, that he did not want to get involved in these proceedings (notwithstanding his love for Mr. Roop, who was being prosecuted) and thereafter, that he was confused about the dates (even though he had talked with Mr. Roop about the matter). He had to admit that, notwithstanding the seriousness of his predicament, Mr. Roop never said anything to him like "Hey, you remember that I was at your house that day, right?" We see virtually no possibility that a jury would have afforded this testimony any weight. See Rivera, 840 So. 2d at 289, 292.

Given the patent and severe credibility problems with Mr. Roop's alibi witness, combined with the de minimis bolstering effect of the 911 recording, we

- 19 -

conclude that there is no reasonable possibility that the admission of the 911 call contributed to the verdict. Thus, the admission of that recording, even if error, was harmless beyond a reasonable doubt and provides no basis for reversal.

IV.

In sum, we conclude that the trial court did not abuse its discretion in admitting the recording of the 911 call because the excited utterance exception to the hearsay rule was properly applied. Even if there had been error, however, it was harmless. Accordingly, we affirm Mr. Roop's judgment and sentence.

Affirmed.

WALLACE, J., Concurs.
ROTHSTEIN-YOUAKIM, J., Dissents with opinion.

ROTHSTEIN-YOUAKIM, Judge, Dissenting.

In his brief on appeal, Devin Roop argues that the trial court erred in admitting Frank Yeater's 911 call because it was "completely hearsay" that did not fall within the excited utterance "or some other hearsay exception" and that the error was not harmless beyond a reasonable doubt. Roop's argument is not eloquent; nor is it particularly thorough. But he makes it.

Moreover, in the trial court, he twice objected that the call was inadmissible hearsay intended to improperly bolster Yeater's testimony. And once he made a proper objection, the burden shifted to the State, as the proponent of the evidence, to establish its admissibility. See, e.g., Yisrael v. State, 993 So. 2d 952, 956

- 20 -

(Fla. 2008); Caldwell v. State, 137 So. 3d 590, 591-92 (Fla. 4th DCA 2014); Self v. State, 55 So. 3d 677, 679 (Fla. 5th DCA 2011). Because I disagree that the State carried that burden, I would hold that the trial court abused its discretion in admitting that portion of the call in which Yeater identified Roop as his assailant. Moreover, because I also disagree, on the facts of this particular case, that the error was harmless beyond a reasonable doubt, I would reverse and remand for a new trial.

Background

Yeater has known Roop and Roop's stepbrother for more than a decade, and they all lived in the same neighborhood. Yeater and Roop went to school together and used to be friends.

On New Year's Eve 2013, an incident occurred between Yeater and Roop's stepbrother in Roop's presence. The authorities were called, but Yeater was not charged with any wrongdoing.

At around noon five days later, Yeater was driving along a quiet stretch of road in Lake Wales on his way home from a flea market when he noticed a car quickly gaining on him. The car pulled alongside Yeater's truck. At that point, Yeater subsequently maintained, Roop leaned out of the car's half-open, rear passenger's window and threw an object at Yeater's truck. According to Yeater, Roop knew that Yeater owned that truck because he had seen Yeater driving it on previous occasions. The object struck the driver's side door of the truck near the handle, and the car sped away.

At first, Yeater continued on, but then he decided to turn around and try to retrieve what had been thrown at his truck. He returned to the area where the incident

had occurred and called 911. Approximately two minutes had passed between the incident and the call. Yeater told the 911 operator that Roop had thrown an object at his truck. Yeater then stayed on the phone with the operator and contemporaneously narrated his search for the object, which eventually led to his discovery of a metal pipe. A sheriff's deputy was dispatched to the scene and took photographs of the damage to Yeater's truck. The deputy also recovered the metal pipe from Yeater's truck bed. No fingerprints could be recovered from the pipe. No physical evidence tied Roop to the offense.

The State moved in limine to admit at trial a redacted version of the 911 call, arguing that, although hearsay, Yeater's statement that Roop had thrown the object was admissible as a spontaneous statement and an excited utterance and Yeater's narration of his search for, and eventual discovery of, the metal pipe also was admissible as a spontaneous statement. The State proffered that Yeater would testify that, a couple of minutes after the pipe had been thrown at his truck, he had pulled over to the side of the road, had called 911, and had identified Roop as the person who had thrown the pipe. The State did not proffer further but argued that the mere fact that Yeater had used a calm tone of voice on the 911 recording did not mean that he had not been "still excited or stressed out" from the event.[7]

---

[7]The State argued:

> A statement that described an event or condition as it's occurring or immediately thereafter is sufficient for that exception even if the person making the statement doesn't appear to be in an excited state which in the tape recording the state seeks to introduce as the 911 call progresses, you know, five minutes, six minutes, obviously the state would submit that the excited condition or

Roop objected to the admission of the statement as either an excited utterance or a spontaneous statement and argued that the State was merely attempting to bolster Yeater's testimony. Roop proffered Yeater's prior deposition testimony that, right after the event, Yeater had

> dr[iven] down the road a ways because he was just gonna forget about it, but then thought about it a little more and thought well, then maybe I just should turn back and call the police because something further might happen and I want to put it on the record.

After reviewing the State's motion and "the affidavit in the file" (presumably the complaint affidavit) and listening to parties' arguments and the audio recording of the entire 911 call, the trial court granted the State's motion to play a redacted recording for the jury. As the majority observes, the court made no findings of fact and did not identify the hearsay exception on which it based its admissibility determination.

At trial, Yeater testified to the facts of the offense, as set forth above. When asked whether he had pulled over to the side of the road after the car had sped off, Yeater responded, "At first I continued to keep on going, and then I decided to turn around and—to go grab—see whatever it was, and then go pick it up." Yeater testified that, when he had called 911, he "[had been] scared at that point" and "[had been] frightened" because "I didn't know what—I don't know what [Roop's] intentions were to do."

---

> the speaker is still excited or stressed out from the condition, but he is using a calm tone of voice.
>
> So essentially I just provided this case to go to the point that even though [Yeater] doesn't sound excited or stressed out his statement should still be admissible.

Over Roop's renewed hearsay objection, the State introduced the redacted audio recording of the 911 call into evidence and played the following for the jury:

> 911 OPERATOR:  What's going on State Road 60? Hello?
>
> MR. YEATER:  I was headed -- I was heading down the road and Devin Roop was in a -- the passenger in the back of a black car and he -- he took a piece of, like, metal rebar and he threw it at the side of my truck.
>
> 911 OPERATOR:  Are you outside walking around?
>
> MR. YEATER:  Yes.
>
> 911 OPERATOR:  Okay.
>
> MR. YEATER:  I'm -- I'm looking for the piece of rebar he threw at my truck.
>
> We were both heading south and he passed me up in the passing lane, and that's when he threw the piece of rebar at my truck.
>
> There's a nice little dent and scratch in my door.
>
> I just found it.  It's a metal pipe.
>
> 911 OPERATOR:  It's a pipe?
>
> MR. YEATER:  Yeah.  It's like a metal pipe.  I'm not going to touch it.  I've got a piece of paper here.  That way you can get fingerprints off of it.

On cross-examination, Yeater acknowledged that, despite having been frightened after Roop had thrown the object, he had initially intended to continue driving but then had decided "[s]econds later" to turn around.  On redirect, Yeater clarified that he "was just going to let it go" at first but then had decided to call the police "[b]ecause after initially thinking of who it was, I knew this wasn't going to be a—it wasn't going to stop with Devin Roop."

- 24 -

After the State rested, Roop's stepfather, Russell Brown Sr., testified that Roop had been at Brown's residence in another town on the day of the incident. Brown testified that he remembered that day because it had been his wife's birthday celebration. On cross-examination, Brown acknowledged that he had not told authorities that Roop had been with him that day until after defense counsel had contacted him toward the end of 2014. On redirect, however, he testified that he had not realized that the incident had occurred on the same day as the birthday celebration until after he had spoken to the defense investigator.

In closing, the State argued that the evidence established that Roop had thrown the pipe at Yeater in revenge for the New Year's Eve incident. The State argued that Yeater was credible because, among other things, Yeater had "immediately" identified Roop as the perpetrator. Before again playing the redacted 911 call for the jury, the State directed, "I want you to pay attention and listen to how [Yeater] immediately identifies Mr. Roop as the person who threw that piece of metal pipe . . . at his vehicle." After playing it, the State emphasized that "there was absolutely no hesitation in Mr. Yeater's voice, because he knew exactly who threw this piece of metal pipe . . . . There was no hesitation as he knew who caused the damage to his vehicle . . . . ."

In rebuttal closing argument, the State again emphasized the redacted 911 call in arguing that Yeater had not contrived this situation or fabricated his story:

> Does that sound like a person who is calling 911 in a stressful situation and reporting an incident to law enforcement exactly how it occurred, right after it occurred, and is discussing with law enforcement the actions he's taking to search for a weapon that was hurled at his vehicle?

That 911 recording corroborates exactly what the victim told you.

Analysis

A prior consistent statement is "generally inadmissible hearsay and cannot be used solely to corroborate or bolster a witness's testimony."[8] Howard v. State, 152 So. 3d 825, 828 (Fla. 2d DCA 2014). There are, however, two conceptually related but distinct exceptions to this general rule: (1) if the statement is "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," § 90.803(2), Fla. Stat. (2014); or (2) if it is "[a] spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness," § 90.803(1).

The majority holds that the trial court properly admitted Yeater's 911 call under the "excited utterance" exception. To qualify as an excited utterance, "the statement must be made: (1) 'regarding an event startling enough to cause nervous excitement'; (2) 'before there was time to contrive or misrepresent'; and (3) 'while the person was under the stress or excitement caused by the event.' " Hayward v. State,

---

[8]Pursuant to section 90.801(2)(b), Florida Statutes (2014), such a statement may constitute admissible nonhearsay when the declarant testifies at trial and the statement is offered to rebut a charge of improper influence, motive, or recent fabrication of the declarant, but the prior consistent statement "must have been made 'prior to the existence of a fact said to indicate bias, interest, corruption, or other motive to falsify.' " Ortuno v. State, 54 So. 3d 1086, 1088 (Fla. 1st DCA 2011) (quoting Preston v. State, 470 So. 2d 836, 837 (Fla. 2d DCA 1985)). Because Yeater made his statement to 911 identifying Roop as the perpetrator after Yeater had developed his dislike of Roop and after the incident on New Year's Eve, this section is inapplicable. See id. at 1088-89.

24 So. 3d 17, 29 (Fla. 2009) (quoting Hudson v. State, 992 So. 2d 96, 107 (Fla. 2008)). The excitement of the startling event deprives the declarant of the reflective capacity essential for conscious misrepresentation and, thus, provides sufficient guarantees of reliability that justify admissibility. See id.; see also Charles W. Ehrhardt, Ehrhardt's Florida Evidence § 803.2, at 1020-22 (2016 ed.) ("A person who is excited as a result of a startling event does not have the reflective capacity essential for conscious misrepresentation; therefore statements that are made by the person who is in a state of excitement and has not had an opportunity to engage in reflective thought are spontaneous and have sufficient guarantees of truthfulness." (footnote omitted)). Consequently, "[i]f sufficient time passed for reflective thought, the proponent for admission of the statement must show that reflective thought did not occur," Williams v. State, 967 So. 2d 735, 748 (Fla. 2007), and it must do so by a preponderance of the evidence, Tucker v. State, 884 So. 2d 168, 173 (Fla. 2d DCA 2004).

In my view, the record establishes that Yeater not only had sufficient time for reflective thought but actually engaged in such thought. Contrary to the majority's assertion, that I would find error on this basis does not mean that I shoulder Roop's burden either in the trial court or on appeal to make a proper argument; it means that I decline to shoulder the State's burden in the trial court to lay a sufficient predicate upon Roop's objection to the statement's admission as an excited utterance or a spontaneous statement. See Yisrael, 993 So. 2d at 956 ("[T]he State, as the evidentiary proponent, thus had the burden of supplying a proper predicate to admit this evidence under an exception to the rule against hearsay."); Mariano v. State, 933 So. 2d 111, 118 (Fla. 4th DCA 2006) ("[I]t is the state's burden to show that the statement is an excited

- 27 -

utterance."); see also Andrews v. State, 261 So. 2d 497, 498 (Fla. 1972) ("[F]ailure to lay a proper predicate converts otherwise admissible testimony into hearsay. It follows that an objection on hearsay grounds is sufficient to preserve for appellate review the issue of failure to lay a proper predicate."); Carter v. State, 951 So. 2d 939, 943 (Fla. 4th DCA 2007) ("An objection to evidence on hearsay grounds is sufficient to preserve for appellate review the failure of the proponent of the evidence to lay a proper predicate."). As set forth above, Yeater's prior consistent statement was presumptively inadmissible hearsay absent a determination that it fell within the excited utterance or other exception. See Howard, 152 So. 3d at 828; Tucker, 884 So. 2d at 173 ("Because of these three factual preconditions to the admission of an excited utterance, the procedures for preliminary questions outlined in section 90.105(1), Florida Statutes (2002), apply when a party seeks to introduce an excited utterance into evidence over the objection of the opposing party."). Once Roop objected to its admission as an excited utterance, the trial court could not properly have admitted it as an excited utterance until the State proved, and the court found, by a preponderance of the evidence, "the factual circumstances permitting the introduction of the statement as an excited utterance." Tucker, 884 So. 2d at 173 (stating that, when faced with objection to excited utterance, trial court must find that preponderance of evidence supports factual circumstances permitting statement's admission as excited utterance). These factual circumstances include that the statement was made "before there was time to contrive or misrepresent," i.e., before there was time for reflective thought. Id. at 174.

While the majority merely "expresses some concern" that the trial court failed to explicitly find this factual circumstance, I would hold that reversal is warranted

because it would have been impossible for the trial court to find this factual circumstance on this record, which the State bore the sole burden to establish. At the hearing on the motion in limine, the State did not contest or object to Roop's proffer of Yeater's prior deposition testimony that Yeater had

> dr[iven] down the road a ways because he was just gonna forget about it, but then thought about it a little more and thought well, then maybe I just should turn back and call the police because something further might happen and I want to put it on the record.

Moreover, as noted above, before the State introduced the 911 tape at trial, Yeater had testified, "At first I continued to keep on going, <u>and then I decided to turn around and—to go grab—see whatever it was, and then go pick it up</u>." (Emphasis added.)

The majority insists that this testimony can be construed to mean that Yeater was "acting on impulse and not with the benefit of time sufficient to overcome his instincts and fabricate a story." Yet nothing about Yeater's testimony suggests that he was merely acting on impulse. Yeater "thought about it" enough to decide that he should "put it on the record" because it supposedly involved Roop and "something further might happen." He "decided" to go back to look for what had been thrown at his truck. This is evidence of a conscious, deliberate process.[9] Yeater's acknowledged

---

[9]The cases upon which the majority relies either failed to mention what transpired between the event and statement or had evidence showing declarant did not engage in reflective thought. <u>See</u> <u>Williams</u>, 967 So. 2d at 749-50 (noting that only evidence between event and declaration was shower that declarant took while still suffering from stab wounds without any evidence of what transpired between event and declaration or what occurred during shower other than defendant's conjecture); <u>Cox v. State</u>, 473 So. 2d 778, 782 (Fla. 2d DCA 1985) (not mentioning whether reflective thought occurred); <u>Taylor v. State</u>, 146 So. 3d 113, 116 (Fla. 5th DCA 2014) (noting absence of evidence that declarant had sufficient time for reflection without mentioning whether declarant actually reflected between event and statement); <u>Vanevery v. State</u>, 980 So. 2d 1105, 1107 (Fla. 4th DCA 2008) (rejecting argument that calm tone of caller

- 29 -

ability to reflect is the exact <u>opposite</u> of evidence that he had <u>not</u> engaged in reflective thought, and, therefore, his subsequent identification could not have been admissible as an excited utterance regardless of whether he was otherwise still rattled by the event.[10] See <u>Elysee v. State</u>, 920 So. 2d 1205, 1207-08 (Fla. 4th DCA 2006) (holding that victim's statement to police was not excited utterance, despite that victim made it while visibly upset and scared fifteen to twenty minutes after event, because victim's testimony that she "got to thinking about it" before making the statement "indicated beyond any question that she had engaged in reflective thought"); <u>see also</u> <u>Hutchinson v. State</u>, 882 So. 2d 943, 951-52 (Fla. 2004) (holding excited utterance inadmissible when there was sufficient time to permit reflective thought and court could only speculate as to whether declarant engaged in reflective thought between event and statement absent any evidence on what transpired during this period, noting that "[a] statement as to what occurred does not become admissible merely because the victim is still in an excited state" (quoting <u>Charlot v. State</u>, 679 So. 2d 844, 845 (Fla. 4th DCA 1996))), <u>receded from on other grounds by</u> <u>Deparvine v. State</u>, 995 So. 2d 351, 369 (Fla. 2008); <u>Mariano</u>, 933 So. 2d at 117 ("[T]he statement took the form of a narrative of the events, which in and of itself indicates that the victim is reflecting upon the events of

---

was not excited utterance without describing whether there was sufficient time for reflective thought); <u>Werley v. State</u>, 814 So. 2d 1159, 1161 (Fla. 1st DCA 2002) (not mentioning whether declarant actually engaged in reflective thought or what happened between startling event and statement); <u>Edwards v. State</u>, 763 So. 2d 549, 550 (Fla. 3d DCA 2000) (same); <u>Rivera v. State</u>, 718 So. 2d 856, 858 (Fla. 4th DCA 1998) (same).

[10]The State elicited Yeater's testimony that he had ultimately decided to call police "[b]ecause after initially thinking of who it was, I knew . . . it wasn't going to stop with Devin Roop" after it had already played the 911 recording for the jury, and so this evidence was not before the trial court when it overruled Roop's renewed objection. Nonetheless, this evidence merely reinforces my determination that Yeater had ample opportunity for reflective thought before calling 911.

the evening. Because the only evidence the state provided to support the admission of the statement was the victim's upset state, this was insufficient to warrant admission of the statement as an excited utterance."). Accordingly, as Roop argues, albeit inartfully, on appeal, Yeater's identification of him to the 911 operator was "completely hearsay" that did not fall within an exception.[11]

Having concluded that the admission of the identification was error, the question becomes whether the error was harmless beyond a reasonable doubt. See Geissler v. State, 90 So. 3d 941, 948 (Fla. 2d DCA 2012) (observing that State bears burden of establishing harmlessness beyond reasonable doubt (citing State v. DiGuilio, 491 So. 2d 1129, 1138 (Fla. 1986))). With no physical evidence linking Roop to the offense, this case boiled down to a credibility contest between Yeater, the sole eyewitness, and Brown, who testified that Roop had been nowhere near the scene. Although acknowledging that "the credibility-enhancing effect of an improperly admitted prior consistent statement can be harmful in close cases like this," the majority reasons

---

[11]Because I am obligated to affirm on any basis that finds support in the record, see, e.g., Robertson v. State, 829 So. 2d 901, 906 (Fla. 2002) (recognizing that "tipsy coachman" doctrine allows appellate court to affirm trial court that reaches right result but for wrong reason so long as there is any basis in record that would support result), I must also consider whether the statement was, alternatively, admissible as a "spontaneous statement" under section 90.803(1). I conclude that it was not: the facts precluding the statement's admission as an excited utterance also preclude its admission as a spontaneous statement because they show both reflective thought and a lack of the requisite substantial contemporaneity between the event and Yeater's identification of Roop as the perpetrator to the 911 operator. See Deparvine, 995 So. 2d at 369-70; Hutchinson, 882 So. 2d at 951-52 (holding that statement during phone call about fight was inadmissible under section 90.803(1) because declarant had placed call after leaving house where fight had occurred, interval between event and phone call was long enough to permit reflective thought, and there was no evidence that declarant had not, in fact, engaged in reflective thought).

- 31 -

that the risk of harm is diminished in this case because the bad blood between Roop

and Yeater predated the 911 call:

> [I]f Mr. Yeater's trial testimony that Mr. Roop was his
> assailant was suspect because of a motive to lie, his
> statement to 911 was equally suspect for the same reason.
> It is very hard to see how a jury would consider the trial
> testimony of a witness with a motive to lie more credible
> simply because the same witness said the same thing at an
> earlier time when he had the same motive to lie. . . .  Thus,
> the bolstering effect such a prior consistent statement on the
> facts of this case, if any, would have been minimal.

During closing argument, however, the State replayed Yeater's 911 call

and, among other things, repeatedly emphasized Yeater's "immediate" identification of

Roop as the attacker and argued that its very immediacy rendered it more worthy of

belief.  In short, the State relied on the statement itself to explicitly undermine the finding

concerning the statement that the majority insists the jury naturally would have made.

The risk of harm, therefore, is not diminished in this case but actually heightened.

Moreover, although certainly "shifting," Brown's alibi testimony was not so lacking in

credibility as to be inherently incredible.

Consequently, I cannot agree that there is no reasonable possibility that

the admission of Yeater's identification of Roop during the 911 call contributed to the

verdict, see Thomas v. State, 993 So. 2d 105, 108-09 (Fla. 1st DCA 2008) (reversing for

new trial because there was reasonable possibility that erroneous admission of hearsay,

which State emphasized at closing argument, contributed to conviction); Elysee, 920

So. 2d at 1207-08 (holding that hearsay did not qualify under excited utterance

exception and that "[a]llowing the officer to bolster the credibility of the victim, who was

the only witness to the crime, with her prior consistent statements, was prejudicial"), and

I must respectfully dissent.